EL PUEBLO DE PUERTO RICO, recurrido, *v.* IRIS VIOLETA RODRÍGUEZ RODRÍGUEZ y LYDIA SERRANO HERNÁNDEZ, acusadas y peticionarias.

*Número:* CE-87-411 *Resuelto:* 20 de mayo de 1991

*Enrique Rivera Mendoza,* abogado de las peticionarias; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Revisamos, mediante el trámite de mostración de causa, una resolución emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan,(1) mediante la cual dicho foro denegó una moción de supresión de evidencia presentada por las peticionarias Iris Violeta Rodríguez y Lydia Serrano Hernández. Mediante dicha moción se solicitó se decretase la inadmisibilidad de una evidencia obtenida en un registro llevado a cabo, *sin orden judicial,* en el automóvil de las referidas peticionarias, por agentes de la Policía de Puerto Rico, mientras éstas se encontraban *bajo custodia policíaca* dentro de un cuartel de la Policía.

Los argumentos esgrimidos por el Procurador General de Puerto Rico en su comparecencia en cumplimiento de la orden de

---

(1) Hon. Miguel A. Rivera Arroyo, Juez Superior.

mostrar causa emitida nos permiten examinar, por vez primera en nuestra jurisdicción, *la legalidad y contornos del llamado registro "tipo inventario"*.

I

En la noche del sábado 18 de octubre de 1986, entre las 11:00 a 11:30 P.M., la joven Elizabeth Hernández se acercó al policía Arquímides Rivera, quien se encontraba de "ronda preventiva" en las inmediaciones del Hotel Ramada, localizado el mismo en la Avenida Ashford del sector del Condado, San Juan, Puerto Rico. Ésta le informó al referido agente del orden público que tres (3) días antes, esto es, el miércoles 15 de octubre, mientras ella y su prima, de nombre Diana Aponte, se encontraban cerca de la "Casa de España", dos (2) mujeres que iban en un automóvil marca Toyota, color ladrillo, tablilla 51-A-486, *las habían amenazado con un revólver*. Le informó, en adición, que temía que éstas pudieran pasar por el sector del Condado en que ellas se encontraban esa noche y trataran nuevamente de hacerles daño. El policía Rivera, a su vez, le comunicó al policía Jorge López la información que había recibido, solicitando de éste que estuviera atento a cualquier automóvil que correspondiera a dicha descripción.

No había transcurrido una hora, cuando ambos agentes, quienes continuaban en su labor de vigilancia por la Avenida Ashford, divisaron el automóvil descrito. Coincidentalmente, una de las querellantes, Elizabeth Hernández, llamó su atención y les señaló a las aquí peticionarias como las personas a las que ella se había referido en su querella ante ellos. El policía Rivera ordenó a dichas personas que detuvieran el auto. En lugar de detenerse, una de las ocupantes del vehículo lanzó una botella de cerveza, alcanzando a Elizabeth Hernández en el lado izquierdo ·de la frente, prosiguiendo su marcha por la Avenida Ashford en dirección de San Juan. El policía López detuvo y abordó un automóvil privado con el propósito de perseguirlas, dándole alcance al auto de las peticionarias frente al Hotel Regency, localizado el mismo en la antes mencionada Avenida Ashford. En eso llegó al lugar el

policía Rivera y entre ambos agentes procedieron a detener a éstas.

Las peticionarias fueron trasladadas, conjuntamente con su vehículo de motor, al cuartel de la policía de la zona turística de San Juan "para investigación".(2) *Éstas fueron llevadas al interior del mismo para ser entrevistadas mientras el vehículo permanecía estacionado fuera del referido cuartel.* El policía López procedió *a registrar* el vehículo ocupado, encontrando debajo del asiento del conductor un revólver calibre 38, marca Ruger, cañón corto, color negro y número de serie mutilado, cargado con cuatro (4) balas del mismo calibre.

Ya en horas del domingo 19 de octubre de 1986, los agentes Rivera y López condujeron a las peticionarias Rodríguez y Serrano a la Sala de Investigaciones del Centro Judicial de San Juan, donde dialogaron sobre el caso con la Fiscal de turno, Hon. Isabel Delgado. Ésta les instruyó sobre los distintos cargos a radicar contra las peticionarias.(3) La Fiscal Delgado, mediante formulario que lleva fecha de 20 de octubre de 1986, formalmente ordenó la confiscación del vehículo de motor en que transitaban las peticionarias en la noche del 18 de octubre de 1986.

Habiendo el Ministerio Público radicado los correspondientes pliegos acusatorios ante el Tribunal Superior, Sala de San Juan, por los delitos imputados,(4) las peticionarias solicitaron la "supresión" del arma de fuego en controversia. El Ministerio Fiscal se opuso. El tribunal de instancia señaló para vista la moción radicada; en dicho día, las partes *argumentaron oralmente* en

---

(2) Ello así surge de la declaración jurada que por escrito prestara el policía López el día 19 de octubre de 1986 ante la Fiscal Isabel Delgado.

A la luz de los hechos antes relatados, no cabe la menor duda de que las peticionarias fueron, a todos los fines legales, *arrestadas* pos los agentes del orden público. *Pueblo v. Fournier,* 77 D.P.R. 222, 262 (1954).

(3) Por la posesión y portación de dicha arma se le imputó a las peticionarias una infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418. Además, se le radicaron acusaciones por infracción a los Arts. 11 y 32 de la referida Ley de Armas, 25 L.P.R.A. secs. 421 y 442 (posesión de un arma con el número de serie mutilado o borrado, y apuntar a un ser humano con un arma); infracción al Art. 153 del Código Penal, 33 L.P.R.A. sec. 4194 (amenazas), e infracción al Art. 95 del Código Penal, 33 L.P.R.A. sec. 4032 (agresión agravada).

(4) Véase pág. 443 esc. 3.

apoyo de sus respectivas posiciones. El foro de instancia emitió resolución denegando la supresión solicitada.

Inconformes, las peticionarias acudieron ante este Tribunal, vía *certiorari,* cuestionando la legalidad del registro del vehículo en que ellas viajaban, realizado por los agentes de la Policía de Puerto Rico mientras ellas se encontraban arrestadas *dentro* del Cuartel de la Policía. Específicamente plantean:

Erró el Honorable Tribunal de Instancia al declarar no ha lugar la moción de supresión de evidencia y no determinar que la evidencia ocupada fue obtenida ilegalmente en violación al artículo II, sección 10, de la Constitución del Estado Libre Asociado de Puerto Rico. Petición de *certiorori,* págs. 4–5.

Mediante resolución a esos efectos, le concedimos término al Procurador General de Puerto Rico para que mostrara causa por la cual no debíamos expedir el auto solicitado y dictar sentencia revocatoria; decretamos, en atención a la moción en auxilio de jurisdicción que presentaran las peticionarias, la paralización de los procedimientos ante el tribunal de instancia, y ordenamos que se elevara una transcripción de los procedimientos seguidos en la vista de supresión de evidencia celebrada en dicho foro de instancia.

En su comparecencia en cumplimiento de la orden de mostrar causa emitida, el Procurador General de Puerto Rico argumenta que el registro efectuado al automóvil en que viajaban las peticionarias, en el cual se encontró el arma de fuego, constituyó un registro "tipo inventario" para el cual no era necesario una orden previa, ya que por disposición expresa de ley, una vez las peticionarias fueron detenidas, procedía la confiscación del vehículo y el registro del mismo con el propósito de hacer un inventario de las pertenencias que en dicho vehículo existían. En segundo lugar, aboga por la razonabilidad del registro, dada la totalidad de las circunstancias del caso. Contando, en adición, con el beneficio de la transcripción de los procedimientos acaecidos durante la celebración de la vista no evidenciaria que se llevara a cabo ante el foro de. instancia, procedemos a resolver el recurso radicado.

## II

◼ La Sec. 10 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1982, pág. 229, establece que:

*No se violará el derecho del pueblo a la protección de sus personas,* casas, papeles y efectos *contra registros,* incautaciones y allanamientos *irrazonables.*

No se interceptará la comunicación telefónica.

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación,* describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

*Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.* (Énfasis suplido.)

◼ Esta disposición constitucional tiene tres objetivos básicos: "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión." *E.L.A. v. Coca Cola Bott. Co.,* 115 D.P.R. 197, 207 (1984); *Pueblo v. Dolce,* 105 D.P.R. 422, 429–431 (1976).

Las peticionarias no cuestionan la legalidad del arresto efectuado por los agentes del orden público en el presente caso. Bajo las circunstancias particulares presentes en el caso, dicho argumento resulta ser jurídicamente improcedente; esto es, no hay duda que los policías tenían autoridad en ley para arrestar a las peticionarias. Regla 11 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986); *Pueblo v. Zayas Fernández,* 120 D.P.R. 157 (1987); *Pueblo ex rel. E.P.P.,* 108 D.P.R. 99 (1978); *Pueblo v. Felicier Villalongo,* 105 D.P.R. 600 (1977); *Pueblo v. Sosa Díaz,* 90 D.P.R. 622, 626 (1964).

◼ En relación con registros, hemos expresado que la Sec. 10 del Art. II de nuestra Constitución, ante, interpone la figura independiente e imparcial del juez entre los agentes del orden público y los ciudadanos, correspondiéndole al magistrado hacer

el delicado balance entre éstos y las necesidades del Estado de investigar agresivamente los delitos cometidos. *E.L.A. v. Coca Cola Bott. Co.,* ante; *Pueblo v. Malavé González,* 120 D.P.R. 470 (1988). No es deseable que, de ordinario, la determinación de causa probable sea realizada en esta clase de situaciones "by the officer engaged in the often competitive enterprise of ferreting out crime". *Coolidge v. New Hampshire,* 403 U.S. 443, 449 (1971). Las excepciones a esta norma, que no es absoluta, son por otra parte limitadas y específicas. *Pueblo v. Malavé González,* ante; *Pueblo v. Rivera Rivera,* ante.

■ En *Pueblo v. González Rivera,* 100 D.P.R. 651, 656 (1972), adoptamos por referencia las circunstancias en que se permite que se dispense del requisito de la orden judicial previa según fueran expuestas por el Tribunal Supremo federal:

> Entre las pocas excepciones señaladas por aquel alto tribunal, figuran el registro incidental a un arresto legal, *Agnello* v. *United States,* 269 U.S. 20, 70 L.Ed. 147; *Preston* v. *United States,* 376 U.S. 364, 11 L.Ed.2d 777; el registro de un vehículo de motor, barco o vagón cuando existe causa probable para creer que se transporta mercancía de contrabando o prohibida por ley. *Carrol* v. *United States,* 69 L.Ed. 542; *Hasty* v. *United States,* 75 L.Ed. 624; *Brinegar* v. *United States,* 93 L.Ed. 1879, *cuando el vehículo ha sido confiscado y el registro posterior del vehículo está relacionado con la razón por la cual se arrestó a su ocupante, Cooper* v. *California,* 386 U.S. 58, 17 L.Ed.2d 730, cuando la propiedad a ser incautada está en proceso de destrucción o en inminente riesgo de ser destruida, *Johnson* v. *United States,* 92 L.Ed. 436; *McDonald* v. *United States,* 93 L.Ed. 155, o cuando las exigencias de las circunstancias hacen imperativo proceder a un registro previo al arresto como cuando de no efectuarse el registro se pone en peligro la vida de los agentes o de otras personas. *Maryland Penitentiary* v. *Hayden,* 387 U.S. 294, 18 L.Ed.2d 782; y cuando se da consentimiento para el registro o se renuncia al derecho constitucional contra registros y allanamientos irrazonables, *Zap* v. *United States,* 328 U.S. 624, 90 L.Ed. 1477. (Énfasis suplido y escolio omitido.) *Pueblo v. González Rivera,* ante, págs. 656–657.

Por primera vez tenemos la oportunidad de enfrentarnos a una de las excepciones que adoptamos por referencia en *Pueblo v.*

*González Rivera,* ante; en específico, aquella que permite el registro de un vehículo cuando el mismo ha sido confiscado y el registro subsiguiente del vehículo está relacionado con la razón por la cual se arrestó a su ocupante según lo adoptamos del caso de *Cooper v. California,* 386 U.S. 58 (1967). Es menester, sin embargo, que aclaremos los pronunciamientos a esos efectos hechos en *Pueblo v. González Rivera,* ante, demarcando los linderos de dicha decisión. A esos fines, naturalmente, resultan ser de gran utilidad las decisiones que sobre la materia ha emitido el Tribunal Supremo de los Estados Unidos.

## III

En *Cooper v. California,* ante, un individuo fue arrestado y acusado por venta de heroína. Su automóvil fue incautado para comenzar los procedimientos de confiscación a tenor con la Sec. 11611 del Código de Salud y Seguridad del Estado de California.[5] Una semana después el vehículo fue registrado encontrándose evidencia delictiva que posteriormente es presentada en evidencia en el correspondiente caso criminal. La Corte de Apelaciones de California determinó que dicho registro no estaba autorizado por el estatuto en cuestión en ausencia de lenguaje claro y expreso a esos efectos. Véase *People v. Cooper,* 44 Cal. Rptr. 483 (1965). Concluyó, sin embargo, que si bien el registro fue ilegal esto constituía un "error no perjuicial" (*harmless error*).

En apelación, el Tribunal Supremo federal evitó enfrentarse al planteamiento de *harmless error* al concluir que la Corte de

---

[5] Dicha sección lee:

"Any peace officer of this State, upon making or attempting to make an arrest for a violation of this division, shall seize any vehicle used to unlawfully transport any narcotic or to facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an oc[c]upant thereof, or which is used to facilitate the unlawful possession of a narcotic by an occupant thereof, and shall immediately deliver such vehicle to the Division of Narcotic Enforcement of the Department of Justice to be held as evidence until a forfeiture has been declared or a release ordered." Cal. Health and Safety Code Sec. 1611, pág. 332 (West 1964).

Apelaciones había errado al determinar que el registro efectuado violaba la Cuarta Enmienda. La decisión del caso *Cooper v. California,* ante, dejó sentadas las bases para convalidar registros como parte de *un procedimiento rutinario de hacer un inventario de los objetos que hayan dentro de un vehículo* que por ley la policía debe mantener bajo su control en espera de que se lleve a cabo un procedimiento de confiscación:

> Here the officers seized petitioner's car *because they were required to do so by state law. . . .* They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. . . . The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. *It would be unreasonable to hold that the police, having to retain the car in their custody for such a lengh of time, had no right, even for their own protection, to search it.* (Énfasis suplido.) *Cooper v. California,* ante, págs. 61–62.

La decisión del caso *Cooper v. California,* ante, fue objeto de dura crítica por los comentaristas. Véanse, en general: C.E. Moyland, *The Automobile Exception: What it is and What it is not—a Rationale in Search of a Clearer Label,* 27 Mercer L. Rev. 987 (1976); C.E. Moyland, *The Inventory Search of an Automobile: A Willing Suspension of Disbelief,* 5 U. Balt. L. Rev. 203 (1976); L.R. Katz, *Automobile Searches and Diminished Expectations in the Warrant Clause,* 19 Am. Cri. L. Rev. 557 (1982); V.D. Wilson, *The Warrantless Automobile Search: Exception Without Justification,* 32 Hast. L.J. 127 (1980); Comentario, *The Afthermath of Cooper v. California: Warrantless Automobile Search in Illinois,* 1968 U. Ill. L. F. 401 (1968); Nota, *Warrantless Searches and Seizures of Automobiles,* 87 Harv. L. Rev. 835 (1974).

Ello no obstante, la "excepción" que dicha decisión estableció fue ampliada por el Tribunal Supremo federal. En *South Dakota v. Opperman,* 428 U.S. 364 (1976), la Policía, siguiendo normas departamentales, procedió a realizar un inventario del contenido de un automóvil que había sido ocupado por meras infracciones a leyes de estacionamiento. En la realización del inventario la Policía abrió la guantera del vehículo y descubrió marihuana.

Opperman fue subsecuentemente arrestado y acusado por posesión de marihuana. Una moción para supresión de evidencia fue denegada, resultando convicto. El Tribunal Supremo de Dakota del Sur revocó el veredicto de culpabilidad concluyendo que la evidencia obtenida fue en violación de la Cuarta Enmienda. *State v. Opperman,* 228 N.W.2d 152 (1975).

El Tribunal Supremo federal revocó dicha decisión al sostener que un registro tipo inventario *(warrantless inventory)* no constituía un registro irrazonable en violación de la Cuarta Enmienda *y que no requería determinación previa de causa probable por no ser un registro en busca de evidencia delictiva en el transcurso de una investigación criminal.* Expresó dicho Foro:

> In analyzing the issue of reasonableness *vel non,* the courts have not sought to determine whether a protective inventory was justified by "probable cause". *The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures.* . . . The probable cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly *when no claim is made that the protective procedures are a subterfuge for criminal investigations.*
>
> In view of *the noncriminal context of inventory searches,* and the inapplicability in such a setting of the requirement of probable cause, courts have held —and quite correctly— that search warrants are not required, linked as the warrant requirement textually is to the probable-cause concept. . . . *With respect to noninvestigative police inventories of automobiles lawfully within governmental custody . . . the policies underlying the warrant requirement . . . are inapplicable.* (Énfasis suplido). *South Dakota v. Opperman,* ante, pág. 370 esc. 5.

Al explicar las funciones no investigativas de un registro tipo inventario, el Tribunal señaló que el mismo se desarrolló en respuesta a tres necesidades, a saber: "the protection of the owner's property while it remains in police custody, . . . the protection of the police against claims or disputes over lost or stolen property, . . . and the protection of the police from potential danger". Íd., pág. 369.

■ La decisión emitida en *South Dakota v. Opperman*, ante, *pone de manifiesto el propósito que justifica un registro tipo inventario*. El inventario es llevado a cabo no con el propósito de descubrir evidencia incriminatoria, sino con el propósito de salvaguardar el contenido del vehículo para protección del dueño y la Policía.(6)

En *Illinois v. Lafayette*, 462 U.S. 640 (1982), la Policía arrestó a Lafayette por alteración a la paz y lo llevó al cuartel. Una vez allí, Lafayette fue llevado a un cuarto para ser fichado y se le solicitó que vaciara el contenido de sus bolsillos sobre un escritorio. Luego de cumplir la orden, éste extrajo de un bolso de hombro que llevaba consigo una caja de cigarrillos y colocó el bolso sobre el escritorio. La Policía vació el contenido del bolso y encontró 10 pastillas de anfetaminas dentro de la envoltura plástica de la caja de cigarrillos.

En la vista de la moción de supresión de evidencia que radicara Lafayette, el estado argumentó que el registro del bolso de hombro fue un registro-inventario válido según la doctrina de *South Dakota v. Opperman*, ante. El tribunal de instancia, sin embargo, acogió la moción y ordenó la supresión de evidencia. Dicho foro de instancia intentó distinguir los hechos del caso de los de *South Dakota v. Opperman*, ante, a base del argumento de que una persona tiene un derecho de intimidad mayor en un bolso que en un automóvil y que el interés legítimo del Estado podía lograrse con un método menos "invasivo" (*intrusive*). *Illinois v. La Fayette*, 99 Ill. App.3d 830; 425 N.E.2d 1383 (1981). El Tribunal Supremo de Illinois se negó a revisar. El Tribunal Supremo federal revocó. Al así actuar, en lo pertinente expresó:

> *At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed.* A range of governmental interests supports an inventory process. It is not unheard of for

---

(6) El caso fue devuelto a la Corte estatal. Allí, el Tribunal Supremo, interpretando la Constitución del estado, determinó que un registro tipo inventario sin orden de registro se limitaba a aquellos objetos que estuvieran a plena vista. *State v. Opperman*, 247 N.W.2d 673 (1976).

persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the station house. *A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person.* Arrested persons have also been known to injure themselves —or others— with belts, knives, drugs, or other items on their person while being detained. Dangerous instrumentalities —such as razor blades, bombs, or weapons— can be concealed in innocent-looking articles taken from the arrestee's possession. The bare recital or these mundane realities justifies reasonable measures by police to limit these risks —either while the items are in police possession or at the time they are returned to the arrestee upon his release. *Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure.* It is immaterial whether the police actually fear any particular package or container; the need to protect against such risks arises independently of a particular officer's subjective concerns. . . . Finally, inspection of an arrestee's personal property may assist the police in ascertaining or verifying his identity. (Énfasis suplido.) *Illinois v. Lafayette,* 462 U.S. 640, 646 (1982).

Finalmente, en *Colorado v. Bertine,* 479 U.S. 367 (1987), la Policía arrestó a Bertine por conducir en estado de embriaguez. Luego de que Bertine fuera puesto bajo custodia policial y antes de que arribara una grúa para llevar el vehículo a un área de custodia, la Policía llevó a cabo un inventario del contenido del vehículo siguiendo el procedimiento policial establecido, el cual requería un inventario detallado.

En el procedimiento de inventario, la Policía registró un bolsillo de la parte de atrás del asiento del frente. La Policía observó una bolsa de *nylon* que contenía varios envases de metal. Al abrir los envases encontraron narcóticos y dinero en efectivo. Bertine fue acusado; solicitó la supresión de la evidencia.

Hubo sendos procedimientos en la esfera estatal y federal. El Tribunal de Distrito federal de Colorado determinó que el registro-inventario no violaba la Cuarta Enmienda federal, pero sí la

452

Constitución del estado de Colorado. Por su parte el Tribunal Supremo del estado de Colorado determinó que el caso se regía por las decisiones de *Arkansas v. Sanders,* 442 U.S. 753 (1979), y *United States v. Chadwick,* 433 U.S. 1 (1977), las cuales prohibían el registro, sin orden, de baúles de automóviles y maletas, por lo que resolvió que el registro se había hecho en violación de la Cuarta Enmienda de la Constitución federal.

El Tribunal Supremo federal revocó. A esos efectos expresó, en lo pertinente, que:

> In the present case, as in Opperman and Lafayette, there was no showing that the police, *who were following standardized procedures,* acted in bad faith or for the sole purpose of investigation. *In addition, the governmental interests justifying the inventory searches in Opperman and Lafayette are nearly the same as those which obtain here.* In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police of others that may have been posed by the property. (Énfasis suplido.) *Colorado v. Bertine,* ante, págs. 473–474.

## IV

 Coincidimos plenamente en que los registros "tipo inventario" resultan ser necesarios para la eficiente y sana administración de un sistema de justicia criminal, ello aun en ausencia de una disposición estatutaria a esos efectos.(7) No

---

(7) Resulta procedente señalar que en la Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de junio de 1960 (34 L.P.R.A. ant. sec. 1721), *la cual era la ley vigente al momento de la comisión de los hechos ante nuestra consideración,* no se disponía en forma expresa para la realización de un inventario de la propiedad incautada y confiscada.

La nueva Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723 *et seq.*), sí contiene una disposición específica a esos efectos. El Art. 5 de la referida ley, 34 L.P.R.A. sec. 1723c, dispone que:

"*A la brevedad posible,* el *funcionario* bajo cuya autoridad se ocupó la propiedad *entregará* al dueño, encargado o persona con derecho o interés en la misma *un inventario de la propiedad ocupada.*" (Énfasis suplido.)

tenemos duda alguna que un registro de esta naturaleza, *realizado en relación con vehículos de motor o cualquier otra clase de propiedad sujeta a incautación y confiscación bajo las leyes pertinentes de nuestro ordenamiento o que se lleva a cabo en relación con las pertenencias de una persona que ha sido arrestada y va a ser ingresada en una institución penal,* efectivamente tiene el resultado positivo de proteger tanto los intereses del ciudadano dueño de dicha propiedad como del Estado. *South Dakota v. Opperman,* ante; *Illinois v. Lafayette,* ante. Resolvemos, en consecuencia, que el registro "tipo inventario" constituye una de las "excepciones" al mandato constitucional contenido en la antes citada Sec. 10 del Art. II de nuestra Constitución, ante, que requiere la obtención de una orden judicial antes de procederse a la realización de un registro. *Pueblo v. González Rivera,* ante.

▮ Debe mantenerse presente, sin embargo, que hemos resuelto que, debido a la existencia en nuestro ordenamiento de la antes citada disposición constitucional, "una incautación sin orden judicial produce una presunción de invalidez" (*Pueblo v. Lebrón,* 108 D.P.R. 324, 329 (1979)), y que en consecuencia, le corresponde al Estado el peso de probar la existencia de las excepciones a la norma general establecida por la referida disposición constitucional. *Pueblo v. Vázquez Méndez,* 117 D.P.R. 170 (1986); *Pueblo v. Rivera Rivera,* ante. Ello, naturalmente, significa que, en relación con la situación ante nuestra consideración, el Estado viene en la obligación de *afirmativamente demostrar* que el registro llevado a cabo es uno "tipo inventario".

¿A qué prueba nos referimos? Esto es, ¿qué es lo que tiene que demostrar afirmativamente el Estado?

▮ Somos del criterio que la principal encomienda u obligación del Ministerio Público en esta clase de situaciones —registro de vehículos de motor sujetos a confiscación— será la de *convencer* al foro judicial, mediante prueba satisfactoria a esos efectos, de que el registro en controversia fue realizado por los agentes del Estado con el *legítimo objetivo* de hacer un inventario

454

de la propiedad existente —y así salvaguardar la misma en beneficio y protección tanto del acusado como del Estado— en relación con el procedimiento de confiscación vigente en nuestro ordenamiento jurídico; esto es, demostrando que su alegación a esos efectos no constituye un mero pretexto o subterfugio para encubrir la búsqueda ilegal de evidencia incriminatoria contra el acusado.

¿Cómo lograr ésto? El Estado debe demostrar, cuando menos, que: (1) efectivamente se trata de una situación en que, conforme las leyes vigentes pertinentes y las circunstancias particulares y específicas del caso, procede *prima facie* la incautación preliminar de la propiedad con el propósito de confiscarla (véase Anotación, *Lawfulness of Inventory Search of Motor Vehicle Impounded by Police*, 48 A.L.R.3d 537 (1973)); (2) que existe un procedimiento administrativo estableciendo *guías* respecto a esta clase de situaciones, entre las cuales se incluya la designación de los funcionarios que efectivamente hacen la determinación de confiscar previo a que se efectúe el registro, y (3) que la acción de los agentes del Estado se lleva a cabo siguiendo *estrictamente* el procedimiento establecido. Véase, W.R. LaFave, *Search and Seizures: Treatise on the Fourth Ammendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 3, Sec. 7.4(a), págs. 109–110.[8] Procede que se enfatice el hecho de que los tribunales de instancia deberán velar por el estricto cumplimiento de los antes mencionados requisitos. Dichos foros *no* deberán permitir que la excepción —del registro "tipo inventario"— que

---

[8] "What is needed in the vehicle inventory context, then . . . is not probable cause *but rather a regularized set of procedures* which adequately guard against arbitrariness . . . ."

"Inventories should not be upheld under *Opperman* unless the government shows *that there exists an established reasonable procedure for safeguarding impounded vehicles and their contents and that the challenged police activity was essentially in conformance with that procedure.* This means that a purported inventory should be held unlawful when it is not shown, 'for [instance], that standard inventory forms were completed and kept for future reference (showing presence or absence of valuables), nor that a place of safekeeping for valuables so secured was maintained.'" (Énfasis suplido.) W.R. LaFave, *Search and Seizures: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 3, Sec. 7.4(a), págs. 109–110.

hoy reconocemos a la norma general establecida en la antes citada Sec. 10 del Art. II de nuestra Constitución, ante, se convierta en "carta blanca" para que los agentes del orden público lleven a cabo registros irrazonables en situaciones de hechos inaplicables o inapropiadas y éstos intenten justificar su ilegal proceder a base de dicha excepción.

## V

En lo referente al caso específico ante nuestra consideración, de entrada procede que se señale que no hay duda alguna de que se trata de una situación en que los agentes del orden público —a base de la información recibida y, cuando menos *prima facie*— tenían base legal para incautarse preliminarmente del automóvil en que viajaban las peticionarias con el propósito de que el Estado posteriormente decidiera si confiscaba o no dicho vehículo. A esos efectos, basta con señalar que las testigos Hernández y Aponte le habían informado a dichos agentes que las peticionarias, mientras viajaban en el referido vehículo de motor, las habían amenazado con un arma de fuego que transportaban en el mismo, situación en relación con la cual el Secretario de Justicia de Puerto Rico está autorizado a confiscar vehículos de motor. Véanse: Arts. 6, 8 y 37 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416, 418 y 447.[9]

---

[9] Dispone el Art. 6 de la citada Ley de Armas de Puerto Rico (Ley de Armas), 25 L.P.R.A. sec. 416, que:

"Toda persona que tenga o posea cualquier pistola, revólver u otra arma de fuego sin tener una licencia para ello expedida como más adelante se dispone, será culpable de delito menos grave, y si ha sido convicta con anterioridad de cualquier infracción a este Capítulo o de cualquiera de los delitos especificados en la sec. 427 de este título, o usare el arma en la comisión de uno de dichos delitos, será culpable de delito grave."

Establece el Art. 8 de la referida Ley de Armas, 25 L.P.R.A. sec. 418, que:

"Toda persona que porte, conduzca o tranporte cualquier pistola, revólver o cualquier otra arma de fuego cargada, o que porte, conduzca o transporte cualquier pistola, revólver, o cualquier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u otra arma de fuego, sin tener una licencia para portar armas expedida según más adelante se dispone, será culpable de delito grave."

Por último, dispone el Art. 37 de la mencionada Ley de Armas, 25 L.P.R.A. sec. 447, que:

El récord, sin embargo, está huérfano en lo referente al segundo y tercer requisito, *esto es, de que existe un procedimiento administrativo establecido respecto a esta clase de situaciones y que el Estado siguió estrictamente el mismo*. En la vista que celebró el tribunal de instancia en relación con la moción de supresión radicada por las peticionarias, *dicho foro no recibió prueba alguna*; las partes se limitaron a *argumentar oralmente* sus respectivas posiciones. Procede que se enfatice el hecho de que en dicha vista el representante del Ministerio Público *no* argumentó el punto del registro "tipo inventario"; ello debido, posiblemente, a que los policías López y Rivera no hacen referencia alguna a dicha posición en las declaraciones juradas que prestaron en la investigación del caso. Dicha cuestión es levantada, por vez primera, en la comparecencia para mostrar causa que radicara el Procurador General ante este Tribunal. Nos señala en la misma dicho funcionario, en apoyo de dicha posición, que el policía López cumplimentó un "formulario" —Forma PPR 128— en relación con la incautación del vehículo en controversia, formulario que alegadamente los agentes del orden público vienen en la obligación de cumplimentar en esta clase de situaciones y que el Secretario de Justicia efectivamente procedió a confiscar el vehículo en controversia.

▆ Estamos conscientes del hecho de que el Estado no contaba con el beneficio de la presente decisión al momento de la ocurrencia de los hechos que dan lugar al presente recurso por lo que, naturalmente, no puede demostrar que se cumplió totalmente con la norma hoy establecida. Ello no obstante, es posible que el Estado cuente con prueba suficiente para convencer al foro

"El Secretario de Justicia *confiscará cualquier vehículo,* bestia o embarcación marítima o aérea en que se cargue, descargue, *transporte, lleve o traslade*; que se use para cargar, descargar, transportar, llevar o trasladar; o que se sorprenda cargado, en el momento de cargar, o descargar, o de estar transportando, llevando o trasladando, *cualquier arma en violación de este Capítulo.*

"Para la confiscación y disposición de vehículos, bestias y embarcaciones marítimas o aéreas se seguirá el procedimiento establecido por la ley conocida como 'Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones', secciones 1721 y 1722 del Título 34." (Énfasis suplido.)

de instancia de que el registro llevado a cabo fue uno relacionado con el procedimiento de confiscación. En vista de ello, entendemos procedente devolver el caso al tribunal de instancia para que reciba aquella prueba que las partes tengan a bien presentar sobre este punto, luego de lo cual, naturalmente, dicho foro resolverá si efectivamente se trata de un "*legítimo*" registro "tipo inventario" o, por el contrario, que el policía López registró el vehículo en cuestión meramente en búsqueda de evidencia incriminatoria contra las aquí peticionarias.[10]

Por las razones antes expresadas, *se expide el auto y se dictará sentencia revocatoria de la resolución recurrida, devolviéndose el caso al tribunal de instancia para procedimientos ulteriores consistentes con lo aquí expuesto.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita. El Juez Asociado Señor Hernández Denton emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que a los hechos de este caso no es de aplicación la excepción del registro tipo inventario y que el segundo registro del automóvil fue con propósitos de descubrir evidencia

---

(10) De concluir el tribunal de instancia que el registro efectuado *no* fue uno "tipo inventario" y que, por el contrario, su único propósito fue la búsqueda de evidencia incriminatoria, dicho foro deberá mantener presente, al resolver la supresión solicitada, la norma establecida por este Tribunal en *Pueblo v. Sosa Díaz*, 90 D.P.R. 622, 631 (1964) —doctrina aún vigente en nuestra jurisdicción— a los efectos de que:

"La prueba en el caso de autos demuestra que el registro efectuado no puede ampararse *bajo las justificaciones* que se han aducido para los registros incidentales en casos de arrestos válidos. *Como se observará, tuvo lugar en ausencia del apelante, cuando ya éste había sido arrestado y se encontraba bajo custodia policiaca, en un lugar distinto y apartado de aquél en que se hallaba el vehículo. No era, pues, necesario para evitar la fuga del acusado, ni un ataque o agresión a quienes le habían detenido, o la destrucción de evidencia relacionada con la comisión del delito por el cual se le acusaba.* No fue un registro incidental al arresto. No fue un registro razonable. *No podía dispensarse de la necesidad de obtener un mandamiento judicial autorizando el registro.*" (Énfasis suplido.)

incriminatoria, disentimos. En vista de que todo registro y allanamiento sin orden judicial se presume irrazonable y que en el caso de autos en la vista de supresión de evidencia el fiscal no probó que el vehículo de las peticionarias hubiese sido confiscado antes del segundo registro y tampoco demostró circunstancias apremiantes para validar su actuación, ordenaríamos la supresión de la evidencia.

I

De los autos del caso se desprende que el 18 de octubre de 1986 el policía Arquímedes Rivera, mientras se encontraba prestando vigilancia en el área del Condado, recibió una querella de unas jóvenes que alegaron que las aquí acusadas, tres días atrás y mientras conducían un vehículo Toyota 1.8, las habían amenazado con un revólver. Las querellantes informaron que temían sufrir algún daño. Con motivo de la querella el policía Rivera le informó de la misma a su compañero, el policía Jorge López, y ambos procedieron a dar vigilancia cerca del área donde estaban las querellantes.

Aproximadamente cincuenta minutos más tarde, temprano en la madrugada del 19 de octubre, ambos oficiales divisaron un automóvil ocupado por dos mujeres cuya descripción coincidía con la ofrecida por las querellantes. Confirmada la información de que en efecto ese era el vehículo, el policía Rivera ordenó a la conductora que detuviera el mismo. Como ella ignoró su orden, los policías las siguieron, detuvieron el vehículo y arrestaron a Iris Violeta Rodríguez y Lydia J. Serrano Hernández.

*De las declaraciones juradas* prestadas por los policías Rivera y López[1] se desprende que, tras arrestarlas en el lugar de los hechos, las condujeron conjuntamente con el automóvil intervenido al cuartel de la zona turística para investigación. Una vez allí, el policía Rivera mantuvo a las peticionarias en el interior del

---

[1] Dichas declaraciones fueron prestadas ante la Fiscal Isabel Delgado, el 19 de octubre de 1986, quien ordenó la confiscación del vehículo el 20 de octubre por haber sido usado para transportar ilegalmente el arma ocupada a las querelladas.

cuartel para entrevistarlas. Mientras éste las interrogaba, el policía López procedió a hacer un registro del automóvil que se encontraba estacionado fuera del cuartel. En el curso del mismo encontró, debajo del asiento del chofer, el revólver calibre 38 con número de serie mutilada que motivó las acusaciones y la orden de confiscación del vehículo.

Sin embargo, el policía López, quien efectuó el registro, *declaró posteriormente en la vista preliminar*, y en lo pertinente, como sigue:

> . . . Que las detuvo un poco más adelante en la Ave. Ashford por razón de la querella del arma. Que arrestó a las imputadas en la propia Ave. Ashford *y las registró para ver si tenían armas. También registró la guantera y sobre los asientos del automóvil y no encontró arma alguna.* Que él y otros policías condujeron el auto y a las imputadas al Cuartel de la Zona Turística *para investigación.* Que las imputadas fueron llevadas al interior del Cuartel *para ser entrevistadas mientras el vehículo permanecía estacionado fuera del Cuartel. Entonces procedió a registrar el vehículo nuevamente y ocupó debajo del asiento del chofer un revólver calibre 38 color negro. Que al momento del registro del auto y la ocupación de la evidencia en las afueras del [C]uartel las imputadas no se encontraban presentes.* (Énfasis suplido.) Apéndice, *Exhibit* II, pág. 2.

En la vista preliminar se determinó causa probable contra las imputadas para acusarlas por infracciones a los Arts. 8 y 11 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 418 y 421 (portación sin licencia y posesión de un arma con el número de serie mutilado).

Oportunamente, las acusadas presentaron una moción de supresión de evidencia, alegando que la evidencia ofrecida en su contra (*i.e.* el revólver) fue obtenida ilegalmente. Para sostener su posición ofrecieron el testimonio que el policía López prestara en la vista preliminar.

Además, de la *transcripción de la vista sobre la Moción de Supresión de Evidencia se desprende, que el Ministerio Fiscal y la defensa estipularon los hechos ocurridos en el caso.* Así lo entendió el tribunal de instancia, Hon. Miguel Rivera Arroyo,

quien expresó que como "lo que hay son unas cuestiones exclusi-
vas de derecho, el Tribunal necesita tiempo para estudiarlas y
resolverlas y lo notificará por escrito".(2) T.E., pág. 4. Los hechos
sobre los cuales no había controversia y que coinciden con la
declaración del policía López en la vista preliminar fueron resu-
midos como sigue:

LIC. RUBIO:

. . . . . . . .

Al momento en que ese vehículo se registra no existía ninguna
confiscación ya que no se había encontrado ningún arma de fuego en
el mismo. La situación es que *se arresta a estas personas, se
registra el carro en el lugar de los hechos, donde se arrestan no se
encuentra material delictivo alguno, se transporta el carro al
Cuartel,* se transporta a las arrestadas y una vez allí, en el Cuartel,
*mientras están con las acusadas, se ponen a registrar el vehículo
en el estacionamiento y encuentran el arma de fuego,* pero en el
momento que está el vehículo de motor en el estacionamiento del
Cuartel de la Policía, el vehículo no ha sido confiscado, simplemente
fue trasladado allí para no dejarlo donde estaba.

HON. JUEZ:

¿El compañero lo que indica es que bajo esas circunstancias se
necesitaría una orden de allanamiento?

LIC. RUBIO:

Eso es así, Vuestro Honor, ya que no se trata de un registro
incidental a un arresto. O sea, la situación es que a ellas las arrestan,
las llevan al Cuartel, el vehículo está allí y fue registrado el vehículo
como un registro incidental al arresto, en el momento del arresto,
pero posteriormente ya el vehículo estaba descansando allí, alejado
de ellos, que precisamente es lo que dice nuestro Tribunal.

HON. JUEZ:

¿*En lo que los compañeros me indican no hay una controversia
de hechos en cuanto al caso?*

HON. FISCAL:

*No, no creo que la haya, Vuestro Honor.*

_____

(2) En su escrito el Procurador General también acepta que los hechos fueron
estipulados según lo declarado en la vista preliminar.

HON. JUEZ:

Es una controversia de derecho, si bajo las circunstancias seña-
ladas por el compañero de la Defensa, la Policía podía registrar sin
orden de allanamiento.

LIC. RUBIO:

Así es, Vuestro Honor.

HON. JUEZ:

Porque, aparentemente, según el compañero de Defensa, no está
cuestionando la intervención inicial por parte de la Policía.

LIC. RUBIO:

No se está cuestionando, hubo una querella en que la Policía . . .

HON. JUEZ:

Yo voy a examinar el documento a ver si sería necesario, para
fines de desfilar prueba, si no fuera necesario, entonces resolvería-
mos *a base de la estipulación de los compañeros.* Vamos a darle un
turno posterior. De todas maneras el compañero Fiscal deberá
hacer las gestiones necesarias a ver si aparece el Policía.

HON. FISCAL:

Muy bien.

HON. JUEZ:

(Llámese nuevamente la Vista de Supresión de Evidencia). Aquí
*según lo sometido por el compañero de la Defensa y por el
compañero Fiscal, lo que hay son unas cuestiones exclusivas de
derecho,* el Tribunal necesita tiempo para estudiarlas y resolverlas y
lo notificará por escrito. Vamos a señalarlo para el día 26 de febrero
de 1987, en la Sala correspondiente. ¿No hay objeción de la
Defensa? (Énfasis suplido.) T.E., págs. 3–4.

Expuestos cabal y fielmente los hechos, cuya veracidad no
está en controversia, de la transcripción anterior surge que se
realizaron dos registros: uno *incidental al arresto* de las peticio-
narias, que conllevó un registro simultáneo de ellas y el vehículo,
y *otro que se llevó a cabo una vez arrestadas las acusadas y
mientras éstas se encontraban siendo interrogadas dentro del
cuartel.* El primer registro no fue cuestionado por la defensa.
Respecto al segundo, se alegó que era necesaria una orden de
allanamiento, pues el vehículo no había sido confiscado. Por su
parte, en la vista el Ministerio Fiscal sostuvo que era aplicable la

excepción mencionada en *Pueblo v. González Rivera,* 100 D.P.R. 651 (1972); esto es, que no es necesaria una orden cuando el vehículo ha sido confiscado y el registro posterior está relacionado con la razón por la cual se arrestó a su ocupante.

El presente recurso de *certiorari* surge con motivo de la denegatoria de la moción de supresión de evidencia que fuera presentada por la defensa. Después de paralizar los procedimientos en el foro de instancia, emitimos orden de mostrar causa por la cual no debiéramos ordenar la supresión. *Tres años y medio* después de paralizar los procedimientos en el caso de autos, este Tribunal devuelve el caso al foro de instancia para que se celebre una nueva vista de supresión y el Estado someta la prueba que no aportó la primera vez.

Por considerar que este curso decisorio es contrario a nuestro ordenamiento, disentimos. Resolveríamos según lo intimado y, por los fundamentos que expondremos, ordenaríamos la supresión.

## II

El Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, consagra el derecho de nuestro pueblo a la protección contra registros y allanamientos irrazonables. Las constituciones de los estados de la Unión y la propia Constitución de Estados Unidos contienen disposiciones de igual naturaleza.

Sin embargo, y beneficiados grandemente por la extensa experiencia constitucional de Estados Unidos, los creadores de nuestra Constitución vislumbraron en ella un documento con "vitalidad independiente", que fuera el instrumento vindicador de todos los derechos de un pueblo democrático. Conscientes de los abusos que en otros lugares se habían perpetrado por el poder gubernamental al invadir caprichosamente la intimidad de los hogares, nuestra Convención Constituyente incluyó como parte del derecho a la protección contra registros y allanamientos irrazonables una cláusula de exclusión mandatoria de aquella prueba obtenida en violación a la protección constitucional.

Por ende, al descargar nuestra responsabilidad constitucional, no debemos adoptar automáticamente todas y cada una de las excepciones en la jurisprudencia norteamericana para validar registros. La intención de la Convención Constituyente fue que el Art. II, Sec. 10 de nuestra Constitución, *supra,* se interpretara de la manera más amplia posible en protección del pueblo. J. Trías Monge, *Historia Constitucional de Puerto Rico,* Río Piedras, Ed. Universitaria, 1982, Vol. 3, págs. 191–192; O.E. Resumil, *Práctica Jurídica de Puerto Rico—Derecho Procesal Penal,* New Hampshire, Equity Publishing Co., 1990, T. 1, Cap. 12, Sec. 12.2, págs. 305–306. Aunque las decisiones del Tribunal Supremo federal definen el contenido mínimo de estas garantías, en el pasado hemos ido más allá de las fronteras de su jurisprudencia. Véase *Pueblo v. Malavé González,* 120 D.P.R. 470 (1988).

Sujetos a contadas excepciones de alcance rigurosamente definido, en Puerto Rico la regla general es que todo registro, allanamiento o incautación que se realice es irrazonable per se de llevarse a cabo sin orden judicial previa. Como nuestra Carta de Derechos es de factura más ancha que la de Estados Unidos, todas la excepciones a la regla general han sido delimitadas y restringidas a las circunstancias particulares que justificaran su adopción.

La protección de la Sec. 10 del Art. II de nuestra Constitución, *supra,* contra registros irrazonables fue extendida específicamente a vehículos de motor en *Pueblo v. Sosa Díaz,* 90 D.P.R. 622 (1964), y en *Pueblo v. Acevedo Escobar,* 112 D.P.R. 770 (1982). A pesar de que la expectativa de intimidad en un automóvil es menor que la que se tiene en un hogar, esto no significa "que al montarnos en un vehículo de motor renunciamos a nuestro derecho de intimidad y a no autoincriminarnos". *Pueblo v. Malavé González,* supra, pág. 479.

La razonabilidad de un registro del interior de un vehículo, sin una orden judicial, depende de la existencia de motivos fundados por parte de los agentes del orden público o de circunstancias apremiantes que provean la justificación necesaria. *Pueblo v. Conde Pratts,* 115 D.P.R. 307, 315, 317 (1984), opinión concurrente

del Juez Presidente Señor Trías Monge. Bajo esta normativa, hemos autorizado un registro del interior de un vehículo para proteger la vida de los agentes y evitar una fuga cuando es contemporáneo e incidental a un arresto y es del área bajo el alcance del arrestado. *Pueblo v. Malavé González,* supra; *Pueblo v. Dolce,* 105 D.P.R. 422 (1976); *Pueblo v. Sosa Díaz,* supra. También hemos validado el registro cuando el agente tiene motivos fundados para creer que en el vehículo se transporta un objeto ilegal o de contrabando con el propósito de evitar su destrucción. *Pueblo v. Guzmán,* 34 D.P.R. 117 (1925). Además, hemos validado un registro sin orden en casos de emergencia. *Pueblo v. Rivera Collazo,* 122 D.P.R. 408 (1988). El factor común de estas excepciones, además de la seguridad de los agentes, es la movilidad inherente del vehículo y su contenido y la necesidad de que la Policía actúe rápidamente para evitar la destrucción del objeto ilegal. Sin embargo, el alcance de estos registros no es ilimitado, sino que está restringido a ciertas áreas dentro del vehículo. Véase *Puello v. Rivera Collazo,* supra, pág. 418.

Por su parte, el Tribunal Supremo federal también ha permitido el registro del interior del vehículo cuando el Estado se ha incautado del mismo y es con el propósito de preparar un inventario de su contenido. Partiendo de la premisa de que este tipo de registro está protegido por la Cuarta Enmienda, el Tribunal Supremo federal ha requerido que el mismo sea razonable. La razonabilidad del mismo, a su vez, depende de si estaba dirigido a la preparación de un inventario a tenor con unos procedimientos previamente establecidos por ley o por reglamentación interna de la Policía. *South Dakota v. Opperman,* 428 U.S. 364 (1976); *Colorado v. Bertine,* 479 U.S. 367 (1987).

Como correctamente afirma la opinión mayoritaria, este Tribunal, a modo de *dictum,* aprobó esta excepción en *Pueblo v. González Rivera,* supra, pero nunca habíamos tenido una oportunidad de aplicarla en una controversia específica y clarificar su alcance. Aunque reconocemos la necesidad de que nos pronunciemos sobre estos extremos, *los hechos en este caso no configuran una situación que amerite la aplicación de esta excepción.*

La opinión del Tribunal desatiende la norma de que "[a]un cuando en relación con esta clase de casos —de 'registros y allanamientos'— los tribunales tienen la obligación de establecer normas generales que regulen la materia, debemos recordar que, por lo general, se hace necesario resolver cada caso de acuerdo con sus hechos particulares". *Pueblo v. Conde Pratts,* supra, pág. 326, opinión concurrente del Juez Asociado Señor Rebollo López. Esta norma adquiere mayor relevancia en el caso de autos, donde la defensa y el Ministerio Público *estipularon los hechos y la prueba.*(3)

## III

De la transcripción de la vista de supresión de evidencia se desprende que el agente que realizó el segundo registro lo hizo únicamente para obtener prueba incriminatoria. La prueba revela que la Policía registró el vehículo de manera incidental al arresto para ver si las peticionarias portaban armas de fuego. En esa primera ocasión registraron la guantera y los asientos del vehículo y no encontraron la prueba delictiva que corroborara la alegación de las querellantes.

Habiéndose efectuado ese primer registro incidental al arresto y no habiendo encontrado un arma de fuego en su interior,

---

(3) Independientemente de esto, nos sorprende grandemente la pasmosa facilidad con que la opinión del Tribunal adopta la doctrina de registro tipo inventario.

Por otro lado, nos preocupa que no se hiciera un análisis sobre los peligros que entraña permitir los registros sin orden bajo el manto de un inventario. La opinión del Tribunal despacha tan complejísima materia y adopta la doctrina del inventario sin delimitar el alcance del mismo a la luz de la disposición de intimidad contenida en nuestra Constitución. De esta manera se permite que la Policía realice registros para inventarios sujeto a que se cumplan dos condiciones: (1) que la propiedad en manos de la Policía esté *sujeta* a confiscación, y (2) que exista un procedimiento uniforme para llevar a cabo los inventarios. Basta que la Policía entienda que *"procede prima facie la incautación preliminar* de la propiedad con el propósito de confiscarla" (énfasis suplido) y que "la acción de los agentes del Estado se llev[e] a cabo siguiendo estrictamente el procedimiento establecido" (énfasis suprimido) opinión mayoritaria, pág. 454. De esta forma deja el alcance del inventario a lo que disponga el procedimiento uniforme de la Policía.

¿Cómo se garantiza entonces el alcance del inventario? ¿Basta acaso con que la Policía de Puerto Rico tenga unas guías internas que regulen el alcance del mismo? ¿Qué partes de un automóvil están sujetas al inventario? ¿Acaso no estamos abdicando nuestra función constitucional y permitiendo que la Policía defina el alcance de este tipo de registro sin un pronunciamiento nuestro con unos criterios definidos?

el vehículo no pudo haber sido ocupado para confiscación por la Policía. Precisamente por eso fue estacionado frente al cuartel de la zona turística y no en el estacionamiento que tiene la Policía en ese lugar. Por ende, el Estado no era responsable de su contenido ni de su custodia, y no se justificaba un inventario.

La Ley de Armas de Puerto Rico dispone que el *Secretario de Justicia* confiscará aquellos vehículos donde se transporte, se use para transportar o se sorprenda en el momento de transportar armas en violación a dicha ley. 25 L.P.R.A. sec. 447. Así, desde *E.L.A. v. Tribunal Superior,* 94 D.P.R. 717, 806 (1967), dijimos que "[p]or el estudio histórico-legislativo que hemos realizado se ve claramente . . . la demolición del concepto sobre el carácter civil de la confiscación en [el] cual solía refugiarse la jurisprudencia que autorizaba el uso de prueba ilegalmente obtenida para lograr dicha confiscación . . .". A la luz de los criterios mínimos del Tribunal Supremo federal, dijimos "que el Estado *no puede establecer ningún uso ilegal con prueba ilegalmente obtenida,* como sería el caso de un automóvil confiscado sin causa probable, legalmente establecida o del registro de un automóvil en forma contraria a la que ordena la Constitución". (Énfasis suplido.) Íd.

No fue hasta el segundo registro, efectuado en otro momento mientras el carro estaba estacionado frente al cuartel y las peticionarias estaban bajo custodia siendo interrogadas por la Policía, que el agente encontró *debajo del asiento* el arma de fuego que originó la confiscación del vehículo. Cuando se lleva a cabo ese segundo registro no había peligro alguno de que las peticionarias pudieran utilizarlo para poner en peligro la vida de los policías o para huir del lugar. El Ministerio Público tampoco alegó que hubiese peligro de que el objeto pudiese desaparecer. Obviamente, no se trató de un registro incidental al arresto ni de ningún otro de los que este Tribunal ha permitido sin previa orden judicial.

Por otro lado, de la transcripción de la vista de supresión se desprende que no hay *ninguna prueba* para sostener que este registro era con el propósito de preparar un inventario. Una escueta alegación de inventario, sin más prueba al respecto, no

puede derrotar la presunción de ilegalidad y justificar la admisibilidad de la prueba.

En la vista de supresión de evidencia el Ministerio Fiscal no presentó prueba suficiente para rebatir la presunción de ilegalidad del registro. Véase *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986), opinión del Juez Asociado Señor Rebollo López. En dicha ocasión sólo se limitó a alegar que no se requería orden pues el registro fue para inventario. No es correcto, como indica la opinión del Tribunal, que "en dicha vista el representante del Ministerio Público *no* argumentó el punto del registro 'tipo inventario'". (Énfasis en el original.) Opinión mayoritaria, pág. 456.

El Fiscal tuvo la oportunidad de presentar los documentos que probaran que se hizo un inventario(4) o a los policías que llevaron a cabo el mismo. Sin embargo, se limitó a una argumentación escueta de sus alegaciones. Por lo tanto, no rebatió la presunción de ilegalidad que opera en su contra. Tampoco es correcto, como señala la opinión del Tribunal, que el Procurador General afirmara que el policía López complementó un formulario de inventario (Forma PPR 128). El Procurador se limita sólo a indicar que dicho formulario existe y que debe llenarse, pero en ningún lugar argumentó que fue utilizado.

Entendemos, pues, que no procede la devolución del caso para darle una segunda oportunidad al Ministerio Fiscal de reforzar su caso y *permitirle alegar hechos nuevos y distintos a los por éste estipulados en la vista de supresión*. Simplemente la resolución del foro de instancia, que declara sin lugar la moción de supresión, no puede prevalecer. *Pueblo v. Vázquez Méndez,* supra.

Recordemos que de ordinario sólo se permitirá una nueva vista de supresión tras un fallo adverso a la defensa en la primera vista si del contrainterrogatorio del Fiscal surgiera prueba ten-

---

(4) El Ministerio Fiscal ni *tan siquiera alegó* en la vista de supresión que se hubiera llenado el formulario "Recibo de entrada y salida e inventario de vehículo", Forma PPR 128, que la Policía viene obligada a completar en casos donde se confisca un vehículo, se encuentra abandonado, ilegalmente estacionado, destartalado o inservible, involucrado en un accidente de tránsito o en la comisión de un delito, recuperado u ocupado para investigación.

dente a probar la inadmisibilidad de la evidencia. Véanse: Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. Rivera Rivera,* 117 D.P.R. 283, 289–290 (1986). Este beneficio sólo lo tiene el acusado para evitar que se violen sus derechos constitucionales.

En ausencia de esta prueba, no podemos refrendar el curso decisorio propuesto por la opinión del Tribunal. Si el Ministerio Fiscal no rebatió adecuadamente la presunción de invalidez del registro efectuado, es realmente sorprendente que cuatro años después esta Curia le permita una segunda oportunidad al Estado para demostrar que el segundo registro fue de tipo inventario.

Por los fundamentos expuestos y a la luz de lo resuelto en *Pueblo v. Sosa Díaz,* supra, revocaríamos la resolución del foro de instancia y ordenaríamos la supresión de la evidencia.