El Pueblo de Puerto Rico, apelado, *v.* Emilio Sánchez Molina, acusado y apelante.

*Número:* CR-89-67 *Resuelto:* 12 de noviembre de 1993

---

*Miguel Ongay Santiago*, abogado del apelante; *Anabelle Rodríguez, Subprocuradora General* y *Procuradora General Interina*, y *Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El apelante recurre ante nos de una sentencia del Tribunal Superior que le encontró culpable de violar el Art. 15 de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec. 3214), a saber, poseer, comprar, retener o disponer de un vehículo de motor a sabiendas de que este había sido obtenido de forma ilícita. Fue condenado a diez (10) años de prisión.

I

El 12 de marzo de 1988 el apelante se encontraba junto con José Marrero Nieves en un Honda Prelude gris en la cafetería El Bohío localizada en el Barrio Almirante Norte de Vega Baja en la carretera Núm. 160. A eso de las 6:15 de la tarde, el agente Luis M. Arroyo Pantojas patrullaba el área junto con el agente Edgar Colón Marín cuando recibió una comunicación del policía Cabán del cuartel de Vega Baja. Éste le informó que se había recibido una confidencia anónima de que en ese barrio y en esa carretera se encontraba un vehículo Honda Prelude gris ocupado por dos (2) individuos armados de metralletas.

Al pasar por El Bohío, el agente Arroyo vio el vehículo en que se encontraba el apelante. Viró en dirección hacia donde estaba el vehículo con el propósito de pasarle por el lado. De repente, el vehículo salió a toda prisa, a exceso de velocidad y sin tomar las debidas precauciones. Los agentes se dieron a su persecución con sirena y biombo

582

encendidos.([1]) El vehículo que conducía el apelante se dirigió hacia la carretera Núm. 2 y llegó hasta la carretera Núm. 675 cuando, al intentar hacer un viraje a la derecha, impactó un poste del tendido eléctrico. Del asiento del pasajero se bajó Marrero Nieves portando una pistola. El agente Arroyo se bajó del automóvil en que patrullaba y, junto con el agente Marín, corrió tras el pasajero. Lograron alcanzarlo y arrestarlo.

En ese momento, el agente Manuel Rivera Villafañe, del Centro de Investigaciones Criminales, quien también había recibido la comunicación en torno a los dos (2) individuos que portaban metralletas en un Honda gris, se encontraba en el área. Observó cuando el Honda gris corría a gran velocidad hacia la carretera Núm. 2. También observó cuando el vehículo que conducía el apelante impactó el poste del tendido eléctrico. Entonces el agente Rivera se estacionó y arrestó al apelante. Poco después llegaron los agentes Arroyo y Marín con Marrero Nieves.

Al intervenir con el apelante los agentes le solicitaron que les mostrara la licencia del vehículo. Éste les mostró una licencia a nombre de Nancy Quiñones correspondiente a un vehículo Honda, modelo de 1983. El vehículo que conducía el apelante, no obstante, era un Honda modelo de 1984. Además, el número de serie que aparecía en la referida licencia no correspondía con el número de serie que tenía la caja del motor. Aparentemente en ese momento no registraron el automóvil en busca de metralletas, sino que lo condujeron al Cuartel de la Policía de Vega Baja.([2])

El lunes 14 de marzo el agente Arroyo realizó el inventario del automóvil involucrado en el accidente. Para ello utilizó el formulario PPR 128. Éste requiere que el agente anote el número de motor, el número de caja, el número de

---

([1]) El vehículo en que viajaban los agentes no tenía marcas.

([2]) Mientras que el agente Arroyo testificó que en ese momento no registraron el vehículo en busca de metralletas, el agente Rivera testificó que sí. E.N.P., págs. 19–20 y 46.

serie o de tablilla y el número de marbete. El agente Arroyo se percató entonces de que los números de serie del panel (*dashboard*) y del poste de la puerta izquierda aparentaban haber sido alterados y no coincidían con el número de caja que está frente al asiento delantero derecho. El número de caja resultó ser de un Honda Prelude gris, modelo de 1984, propiedad del señor Álvarez Fernández, reportado como hurtado el 16 de febrero de 1988. La tablilla que llevaba el vehículo era la de un Honda modelo de 1983, que aparecía registrada a nombre de Nancy Quiñones. El sello de inspección correspondía a dicha tablilla.

Notificado de que su automóvil se encontraba en el cuartel de Vega Baja, el señor Álvarez acudió a identificar el vehículo. Observó que el bonete estaba chocado y que la tablilla no correspondía a la tablilla original. Entregó allí copia de su licencia. El agente Arroyo pudo entonces comprobar que el número de motor del vehículo correspondía al de la licencia del Sr. Álvarez, pero no coincidía con el número del panel (*dashboard*) ni con el del poste de la puerta izquierda ni con el número del marbete y la tablilla. Presentó cargos contra el apelante bajo la Ley de Armas de Puerto Rico y bajo la Ley para la Protección de la Propiedad Vehicular por posesión de vehículo hurtado y por tener tablilla, marbete y sello de inspección indebidos.

El apelante fue sometido a juicio por jurado y hallado culpable de poseer un vehículo a sabiendas de que era hurtado, a tenor con el Art. 15 de la Ley para la Protección de la Propiedad Vehicular, *supra*. Fue sentenciado a diez (10) años de prisión.

En su escrito de apelación ante este Tribunal, el apelante cuestiona la constitucionalidad de las inferencias permisibles establecidas en los incisos 3, 6 y 8 del Art. 16(3), (6) y (8) de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. secs. 3215(3), (6) y (8), por violar las Secs. 7, 10 y 11 del Art. II de la Constitución del Estado

Libre Asociado, L.P.R.A., Tomo 1. Además, impugna la constitucionalidad, así como la claridad de las instrucciones que el juez de instancia impartiera al Jurado en torno a dichas inferencias permisibles.

Por otro lado, el apelante cuestiona que se denegara la moción de supresión de la evidencia obtenida del registro que se realizó del vehículo en virtud de los Arts. 14 y 17 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. secs. 3213 y 3216, por entender que el registro es contrario a la protección constitucional contra registros y allanamientos irrazonables.

También sostiene que la sentencia impuesta es un castigo cruel e inusitado y que el foro de instancia no debió admitir evidencia de sus convicciones anteriores al momento de dictar sentencia. Finalmente, el apelante cuestiona el veredicto rendido por entender que no se probó su culpabilidad más allá de toda duda razonable.

Por su importancia normativa, comenzaremos por discutir aquellos señalamientos de error relacionados con las inferencias permisibles establecidas en la Ley para la Protección de la Propiedad Vehicular.

## II

El apelante fue convicto por el delito de comercio ilegal de vehículos y piezas que se define como sigue:

> Toda persona que posea, compre, reciba, almacene, oculte, transporte, retenga o disponga mediante venta, trueque o de otro modo algún vehículo de motor o pieza de un vehículo de motor, a sabiendas de que fue obtenida mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita, será sancionada con una pena de reclusión por un término fijo de seis (6) años. Art. 15 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3214.

Este delito castiga la mera posesión de un vehículo de motor a sabiendas de que fue obtenido ilícitamente. Puesto que la posesión es un elemento del delito, es indispensable

probar que el imputado tenía la posesión natural o la posesión constructiva del objeto. *Pueblo en interés menor F.S.C.*, 128 D.P.R. 931, 939 (1991).[3] El segundo elemento del delito es el conocimiento de que el vehículo fue obtenido ilícitamente. Para obtener una convicción válida, ambos elementos han de ser probados más allá de toda duda razonable. Íd., pág. 941.

El Art. 16 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3215, en cuestión señala varias circunstancias de las cuales el juzgador de los hechos podrá inferir el elemento mental del delito, es decir, el conocimiento. Dicho artículo, en su parte pertinente, dispone como sigue:

> *Sec. 3215–Inferencias permisibles*
> Se podrá inferir que el imputado tenía conocimiento personal de que el vehículo o pieza había sido adquirido de forma ilícita cuando ocurriera una o más de las siguientes circunstancias:
>
> (3)Cuando el imputado no pueda mostrar prueba fehaciente del precio pagado, cuándo y de quién adquirió el vehículo o pieza o cuándo la transacción se llevó a cabo.
>
> (6)Cuando el vehículo o pieza muestra modificaciones, alteraciones, o los números de identificación están alterados, o la licencia o la tablilla no corresponde a la unidad.
>
> (8)Cuando el vehículo o pieza se encuentre bajo la posesión y control de una persona que no puede probar su derecho a conducirlo o a tener posesión del mismo o misma, cuando haya sido informado como desaparecido, robado, apropiado ilegalmente, o de cualquier otra forma sustraído ilegalmente de la persona con título sobre ellos. Art. 16 de la Ley para la Protección de la Propiedad Vehicular, *supra*.

Sostiene el apelante que las citadas inferencias permisibles son incompatibles con la presunción de inocencia.

---

[3] Mientras que la posesión natural se refiere a la tenencia física sobre el objeto, la posesión constructiva se refiere al poder de ejercer dominio o control, aún en ausencia de tenencia física. *Pueblo en interés menor F.S.C.*, 128 D.P.R. 931 (1991).

Sostiene, además, que las instrucciones que el tribunal de instancia impartiera al Jurado tuvieron el efecto de convertir tales inferencias permisibles en presunciones mandatorias e invertir el peso de la prueba, en violación del derecho del acusado a no ser privado de su libertad sin un debido procedimiento de ley.

A. El Tribunal Supremo federal ha desarrollado un análisis complejo para determinar la validez de las presunciones en el procedimiento criminal a la luz de la Constitución de Estados Unidos. El derecho a no ser privado de la libertad sin un debido procedimiento de ley exige que la culpabilidad sea probada más allá de toda duda razonable. *In re Winship*, 397 U.S. 358, 364 (1970). Ello obliga al Ministerio Fiscal a presentar prueba suficiente y satisfactoria que establezca más allá de toda duda razonable cada uno de los elementos del delito. *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

Las presunciones expresan normas relativas al modo de evaluar la evidencia y las inferencias que pueden hacerse de ésta. Regulan la relación entre dos hechos, el hecho básico (antecedente) y el presumido (consecuente). E.L. Chiesa, *Sobre la validez constitucional de las presunciones*, 14 Rev. Jur. U.I.A. 727, 727–731 (1980). La validez constitucional de las presunciones en casos criminales tiene dos (2) vertientes. Por un lado, la presunción no debe ser ni arbitraria ni irracional. Debe haber una conexión racional entre el hecho básico y el hecho presumido. Esto implica que la ocurrencia del hecho presumido sea más probable que la no ocurrencia. A este criterio de validez el Tribunal Supremo federal le ha llamado *more likely than not test*. *Barnes v. United States*, 412 U.S. 837, 843 (1973); *Turner v. United States*, 396 U.S. 398, 416 (1970); *Leary v. United States*, 395 U.S. 6, 36 (1969). Ver, además, Notas, *The Improper Use of Presumtions in Recent Criminal Law Adjudication*, Stan. L. Rev. 423, 428 (1986). Por otro lado, una

presunción no puede violar la presunción de inocencia ni la obligación del Estado de probar cada elemento del delito más allá de toda duda razonable. *Yates v. Aiken*, 484 U.S. 211, 214 (1988); *Ulster County Court v. Allen*, 442 U.S. 140, 156 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 703–704 (1975).

Hay presunciones que exigen que el juzgador de los hechos infiera el hecho presumido una vez el Estado prueba el hecho básico, sin que pueda considerarse prueba en contrario. A este tipo de presunción se les denomina *presunciones mandatorias concluyentes o presunciones incontrovertibles*. Cuando requieren inferir elementos del delito de manera concluyente, tienen el efecto de eximir al Ministerio Fiscal de probar ese elemento más allá de toda duda razonable. En consecuencia, ese tipo de presunción atenta contra la presunción de inocencia y es inconstitucional. *Francis v. Franklin*, supra, págs.313–314; *Sandstrom v. Montana*, supra, págs. 521–523.

Existen también presunciones que, una vez probado el hecho básico, exigen que el juzgador de los hechos infiera el hecho presumido, a menos que el acusado presente algún *quantum* de evidencia para refutarlo, ya sea más allá de toda duda razonable o por preponderancia de la evidencia. A este tipo de presunción se les denomina *presunciones mandatorias refutables o controvertibles*. Cuando permiten inferir un elemento del delito o un hecho esencial transfieren al acusado la obligación de producir prueba para persuadir al juzgador en torno a la no ocurrencia de ese elemento o hecho. Así relevan al Ministerio Fiscal de probar cada elemento del delito más allá de toda duda razonable. Ese efecto es impermisible por atentar contra la presunción de inocencia y el derecho a no ser privado de la libertad sin un debido proceso de ley. *Francis*

*v. Franklin*, supra, págs. 313–314, 317; *Sandstrom v. Montana*, supra, pág. 517. Es, por lo tanto, inconstitucional.[4]

■ Por otro lado, hay ocasiones en que, establecido el hecho básico, se permite pero no se exige que el juzgador de los hechos infiera el hecho presumido. A este tipo de norma evidenciaria se le conoce como inferencia permisible. No transfiere al acusado ni el peso de la prueba ni la obligación de persuadir al juzgador. Es válida a menos que el acusado pueda demostrar que, a la luz de hechos probados en su caso particular, no había un nexo racional entre el hecho básico y el hecho presumido. Es decir, que no era razonable ni compatible con el sentido común que un juzgador de los hechos hiciera la conexión entre el hecho básico y el presumido. *Francis v. Franklin*, supra, págs. 314–315; *Ulster County Court v. Allen*, supra, pág. 157.[5] A esos efectos, y siempre que no sean la única base en que descansa la determinación de culpabilidad, basta que la presunción satisfaga el criterio de probabilidad. Como vimos, éste consiste en que la ocurrencia del hecho presumido sea más probable que la no ocurrencia. *Ulster County Court v. Allen*, supra, pág. 167.

■ En casos de juicio por jurado, la naturaleza de una presunción se determina a base de las instrucciones que el juez imparta a ese cuerpo antes de deliberar. *Ulster County Court v. Allen*, supra, pág. 158 esc. 16. El criterio es la interpretación que un jurado razonable le daría a la instrucción. Si puede razonablemente entenderse que una porción específica de una instrucción crea una presunción que exime al Estado de probar más allá de toda duda ra-

---

[4] El Tribunal Supremo federal ha intimado que en el único caso en que una presunción mandatoria podría ser válida es si, probado el hecho básico, la culpabilidad puede inferirse más allá de toda duda razonable. *Ulster County Court v. Allen*, 442 U.S. 140, 167 (1979). Es decir, no bastaría con que cumpliera con el criterio de probabilidad esbozado en *Leary v. United States*, 395 U.S. 6 (1969).

[5] A diferencia de las inferencias permisibles, si una presunción mandatoria cumple o no con el criterio del nexo racional se determina de la faz del estatuto o de la instrucción de que se trate. *Ulster County Court v. Allen*, supra, pág. 159.

zonable un elemento del delito, entonces ese lenguaje debe considerarse en el contexto de las instrucciones en su totalidad. *Francis v. Franklin*, supra, pág. 315. El efecto impermisible de este tipo de instrucción no se elimina necesariamente con instrucciones generales sobre la presunción de inocencia y la obligación del Estado de probar la culpabilidad del acusado más allá de toda duda razonable. *Francis v. Franklin*, supra, pág. 319. Ahora bien, este tipo de error podría ser no perjudicial y por lo tanto no impone de manera automática la revocación de la sentencia condenatoria. *Rose v. Clark*, 478 U.S. 570, 576 (1986).

■ B. En esta jurisdicción nos hemos enfrentado pocas veces al problema de la validez constitucional de las presunciones en procedimientos criminales. No obstante, también es principio fundamental de nuestro ordenamiento constitucional que el acusado se presume inocente. *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986). Por lo tanto, el Estado tiene el deber de presentar prueba suficiente y satisfactoria que establezca más allá de toda duda razonable cada uno de los elementos del delito. *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49 (1991); *Pueblo v. González Beníquez*, 111 D.P.R. 167, 174 (1981); Véase, además, *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454, 472–474 (1988).[6]

Ya en *Pueblo v. De Jesús Cordero*, 101 D.P.R. 492, 501 (1973), habíamos señalado como índices de validez de las presunciones el que no alteren el peso de la prueba impuesta al Estado ni lesionen la presunción de inocencia. En ese caso aprobamos la validez de una norma de evidencia prima facie de posesión ilegal por parte de los ocupantes de

---

[6] La prueba es suficiente cuando versa en torno a todos los elementos del delito y su conexión con el acusado. *Pueblo v. Narváez Narváez*, 122 D.P.R. 80 (1988). La prueba es satisfactoria cuando produce certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974). Corresponde al juzgador de los hechos hacer esta apreciación a base de la prueba presentada.

un vehículo en el cual se encuentra una de las armas especificadas en la Ley de Armas de Puerto Rico.

En *Pueblo v. González Beníquez*, supra, reseñamos a modo de *dicta* la jurisprudencia federal aplicable. No llegamos a pronunciarnos en cuanto a la validez de las presunciones a la luz de las instrucciones al Jurado, pero sí determinamos que cuando el juicio se lleva a cabo por tribunal de derecho, la validez de las presunciones se examina a la luz del estatuto que las crea. Íd, pág. 174 esc. 4.

En resumen, nuestra Constitución prohíbe que las presunciones aplicables en los procedimientos criminales eximan al Estado de cumplir con su deber de probarle al juzgador de los hechos que el acusado es culpable más allá de toda duda razonable. También prohíbe que se le imponga al acusado el deber de presentar prueba para probarle al juzgador que es inocente. Nuestra Regla 15 de Evidencia de 1979 (32 L.P.R.A. Ap. IV) incorpora esta normativa y reduce el efecto de las presunciones perjudiciales al acusado a una inferencia permisible. Aunque el inciso A de la Regla 15 (32 L.P.R.A. Ap. IV) indica que el efecto de una presunción es imponer al acusado la obligación de presentar prueba para rebatir o refutar el hecho presumido, el inciso C de esta regla inmediatamente aclara que basta que el acusado produzca duda razonable para refutar el hecho presumido y derrotar la presunción, y que el Jurado no viene obligado a inferir el hecho presumido aunque el acusado no presente evidencia para refutarlo.

La propia Regla 15 de Evidencia, *supra*, requiere que lo anterior se explique al jurado al momento de instruirlo sobre los criterios que utilizará al deliberar. En juicios ante jurado, el tribunal debe impartir instrucciones que incluyan un resumen de la evidencia y del derecho aplicable. Tienen, además, la ineludible responsabilidad de velar porque las instrucciones que impartan sean correctas, claras, precisas y lógicas. *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991). Al explicar el efecto de las

presunciones, el magistrado no debe olvidar que es una figura de autoridad y que los jurados, siendo legos en el derecho aplicable, están propensos a que sean fácilmente influenciados no sólo por lo que en efecto diga, sino por su manera de decir y de proceder. Véanse: Chiesa, *supra*, pág. 749; Notas, *supra*. Pueden, por lo tanto, fácilmente tomar una inferencia permisible por una presunción mandatoria. *Francis v. Franklin*, supra; *Sandstrom v. Montana*, supra, pág. 524.

C. El Art. 16 de la ley en cuestión permite hacer varias inferencias. El acusado impugna específicamente tres (3) de ellas. Sostiene que la número seis (6) no cumple con el requisito de probabilidad reseñado anteriormente. Permite inferir el conocimiento de que el vehículo poseído era hurtado del hecho básico de que la licencia o tablilla no corresponda con la unidad. La número tres (3) permite inferir ese conocimiento del hecho de la mera posesión no explicada. No hace referencia a la naturaleza hurtada del vehículo. Finalmente, la número ocho (8) incorpora la inferencia permisible sobre la posesión de propiedad hurtada no explicada satisfactoriamente.

Primeramente, debemos resolver si las citadas inferencias cumplen con el requisito del nexo racional que debe existir entre el hecho básico y el presumido. Bajo el esquema constitucional vigente, es suficiente que la inferencia permisible reúna este requisito a la luz de las circunstancias particulares del caso, aunque con mayor razón será válida si lo reúne de su faz. Tal es el caso de las inferencias número ocho (8) y número tres (3).

En *Pueblo v. Batista Maldonado*, 100 D.P.R. 936, 939 (1972), reiteramos la validez de una inferencia análoga a la número ocho (8). Reafirmamos la doctrina sentada en *Pueblo v. Gagot Mangual*, 96 D.P.R. 625, 628 (1968), de que es válida una inferencia permisible de culpabilidad a base de la posesión de un objeto hurtado no explicada satisfactoriamente. Este tipo de inferencia no atenta con-

tra el derecho constitucional del acusado a guardar silencio y no declarar, ya que la posesión puede explicarse mediante evidencia independiente del testimonio del acusado. *Barnes v. United States*, supra, págs. 846–847. Tampoco es arbitraria, ya que existe una conexión racional entre el hecho básico, a saber, la posesión de propiedad hurtada no explicada satisfactoriamente, y el conocimiento de dicha condición. En cuanto a la inferencia número tres (3), podemos llegar a una conclusión similar. Aunque no haga referencia a que el vehículo sea hurtado, el Estado tendrá siempre que probar dicha circunstancia, ya que es uno de los elementos del delito. Tiene, por lo tanto, igual efecto que la presunción número ocho (8) y es igualmente válida.

Finalmente, sostenemos la validez de la inferencia número seis (6) en cuanto permite inferir el conocimiento de que el vehículo es hurtado del hecho de que la licencia no corresponda al vehículo. Existe entre hecho básico y presumido una conexión racional, ya que la licencia contiene información suficiente como para que una persona promedio pueda identificar el vehículo al que corresponde. Evaluada en el contexto particular de este caso, también es válida la inferencia número seis (6) en cuanto permite inferir el conocimiento cuando el vehículo o sus números de serie o de identificación estén alterados.

La defensa, sin embargo, impugna la validez de dicha presunción de su faz. Cuestiona cuántas veces el conductor promedio revisa, registro en mano, todos los números de identificación del vehículo. Pero en este caso no estamos ante el conductor promedio. Los hechos probados revelan que el vehículo en que viajaba el apelante se dio a la huida tan pronto se acercó el vehículo de la Policía. El apelante lo manejaba tan desesperadamente que chocó al intentar hacer un viraje y luego, en lugar de producir la licencia correspondiente al vehículo, produjo una licencia perteneciente a un vehículo distinto. Como si fuera poco lo anterior, el pasajero se bajó del vehículo y huyó, revólver

en mano. Resolvemos, pues, que existe en este caso un nexo racional entre el hecho básico y el hecho presumido. Es decir, la probabilidad de que el apelante supiera que el vehículo fue obtenido ilegalmente es mayor que la probabilidad de que no lo supiera.

Lo anterior no basta para disponer del recurso. Nos resta analizar la validez de las inferencias permisibles a la luz de las instrucciones al Jurado, con el fin de determinar si, como alega el apelante, éstas tuvieron el efecto de eximir al Estado del peso de la prueba o imponérselo al acusado.

En lo pertinente a las mencionadas inferencias, el juez de instancia dio las instrucciones siguientes:

> La Ley..[.] dice... los elementos del delito son poseer el automóvil y que sea a sabiendas de que el automóvil ha sido hurtado o robado. La propia ley define, le dice específicamente, cuales son los factores que ustedes tienen que tomar en consideración para determinar si el acusado sabía. A sabiendas quiere decir, que tenga conocimiento de que ha sido hurtado. Si el acusado sabía, tenía conocimiento de que tenía hurtado. [sic] La ley dice específicamente, y ustedes deben tomar en consideración la ley tal y como se lo explico, que se podía inferir que el acusado tenía conocimiento personal de que el vehículo o pieza había sido obtenido en forma ilícita, cuando ocurriera una o más de las siguientes circunstancias. Entre ellas las varias circunstancias. [sic] Yo solamente le [sic] voy a mencionar algunas de ellas en relación con este caso. (Énfasis suplido.) T.E. de 17 de mayo de 1989, págs. 9–10.

Procedió, entonces, el juez a explicar las inferencias que nos ocupan. Luego de que se retiró a deliberar el Jurado, la defensa objetó las referidas instrucciones en la medida en que le explicaron al Jurado que "tienen" y "deben" tomar en consideración las inferencias que provee la ley, toda vez que la ley lo que dice es que "se podrá" inferir. El juez de instancia llamó de nuevo al Jurado y les instruyó nuevamente:

> Al darle las instrucciones sobre el delito recordarán que yo les decía que la ley 15, la ley número 8, número 15, [sic] dice

que constituye delito el poseer un automóvil que haya sido obtenido ilegalmente. Les dije que en cuanto, el a sabiendas, o sea, que quiere decir tener conocimiento de que ha sido hurtado, obtenido ilegalmente que la ley permitía hacer una inferencia permisible, es el Artículo 16 de la ley y específicamente la ley dice: "Se podrá inferir que el imputado tenía conocimiento personal de que el vehículo o pieza había sido adquirido de forma ilícita cuando ocurriera una o más de las siguientes circunstancias". Recordarán que le mencioné una circunstancia específica que ustedes pueden utilizarla a...para inferir el conocimiento personal; o sea, el a sabiendas. Este...creo que con esto se cumple la instrucción .... T.E. de 17 de mayo de 1989, pág. 27.

Entendemos que las instrucciones que el juez de instancia diera al Jurado al explicarles las inferencias permisibles que contiene el Art. 16 de la Ley para la Protección de la Propiedad Vehicular, *supra*, no explicaron cumplidamente al Jurado la naturaleza permisible de las inferencias ni el efecto que estas tienen sobre la obligación del Estado de probar su caso más allá de toda duda razonable. No fue suficiente que el juez de instancia transmitiera literalmente al Jurado el lenguaje del Art. 16, *supra*, a los efectos de que las presunciones que contiene son inferencias permisibles. Tampoco basta que en otras partes de la instrucción se hiciera constar la obligación del estado de probar su caso más allá de toda duda razonable ni la presunción de inocencia. Lo que importa es que el lenguaje potencialmente ofensivo, considerado en el contexto de la totalidad de las instrucciones, pudo razonablemente ser entendido por un jurado promedio como imponiendo al acusado la obligación de presentar prueba para rebatir la inferencia en cuestión. *Francis v. Franklin*, supra, págs. 315 y 319.[7]

---

[7] En ese caso el juez de instancia instruyó al Jurado que los actos de una persona cuerda se presume que son el producto de su voluntad, y que su intención puede inferirse de las consecuencias naturales y probables de sus actos, pero que ambas presunciones son susceptibles de prueba en contrario. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). El juez instruyó al Jurado sobre la presunción de inocencia y la obligación del Estado de probar su caso más allá de toda duda razonable. Aún así, el Tribunal revocó la sentencia.

■ El magistrado debió explicar que una inferencia permisible permite pero no obliga a inferir el hecho presumido una vez probado el hecho básico. Debió explicar también que basta que el acusado arroje duda razonable sobre el hecho presumido para que no opere la presunción, y que aún si el acusado no presenta prueba a esos efectos, no viene obligado a inferir el hecho presumido. Regla 15 de Evidencia, *supra.* No dar estas instrucciones tiene el efecto potencial de convertir la inferencia en una presunción mandatoria sobre un elemento del delito. Ello atenta contra la presunción de inocencia porque releva al Estado de probar su caso más allá de toda duda razonable, e impone sobre el acusado el peso de persuadir mediante la presentación de prueba para refutar la presunción y no meramente arrojando duda razonable sobre el hecho presumido.

■ Ahora bien, a pesar de que el error señalado se cometió, resolvemos que estamos ante un error "no perjudicial" (*harmless*) y que por tal razón no procede la revocación de la condena. En *Yates v. Evatt*, 500 U.S. 391 (1991),[8] el Tribunal Supremo federal establece el criterio que la cláusula de debido proceso de la Constitución federal exige que todo tribunal apelativo utilice para determinar si un error en las instrucciones al Jurado sobre el efecto de alguna presunción es o no perjudicial. Como mínimo, para determinar que el error es no perjudicial, el tribunal apelativo debe primero considerar qué evidencia el Jurado en verdad consideró al llegar a un veredicto y, segundo, sopesar el valor probatorio de dicha evidencia contra el valor probatorio de la presunción. Para concluir que el error fue no perjudicial se necesita estar convencido más allá de duda razonable de que, dado lo abrumador del valor probatorio de la evidencia en verdad considerada por

---

[8] Véase, también, *Estelle v. McGuire*, 502 U.S. 62 (1991). Este último caso modifica el lenguaje usado en *Yates v. Evatt*, 500 U.S. 391 (1991), en cuanto a asuntos no relacionados al criterio que *Yates v. Evatt*, supra, usa para determinar si el error es perjudicial o no.

el Jurado comparado con el valor probatorio de la presunción, el veredicto hubiera sido el mismo en ausencia de la instrucción errónea.[9]

En este caso se puede razonablemente concluir que las instrucciones impartidas no impidieron que el Jurado considerara toda la evidencia pertinente al resolver si el apelante conocía de la obtención ilegal del vehículo.

El Jurado recibió extensa prueba circunstancial del elemento mental de conocimiento de la obtención ilegal del vehículo. Ya vimos que el vehículo se dio a la huida cuando se acercó el vehículo de la Policía. Vimos también que el afán por huir era tal que el apelante perdió el control del vehículo al punto que se estrelló contra un poste del tendido eléctrico. Seguidamente el pasajero se bajó del auto, cargando un revólver y se dio a la huida dejando atrás al apelante, quien no pudo producir la licencia correspondiente al vehículo.

Al comparar el valor probatorio de esta evidencia con el valor probatorio de la presunción, estamos convencidos más allá de duda razonable de que el veredicto hubiera sido el mismo en ausencia de la instrucción errónea. Resolvemos que en este caso el error en las instrucciones al Jurado no fue perjudicial que exija la revocación del fallo.

Pasamos ahora a los otros señalamientos de error.

## III

En su alegato el apelante cuestiona la validez del registro del vehículo que hiciera el agente Arroyo, una vez incautado y detenido aquél en el Cuartel de la Policía de Vega Baja. Específicamente alega que el agente carecía de motivos fundados para realizar el registro, porque alegada-

---

[9] Según lo expresado en *Yates v. Evatt*, supra, pág. 405, el criterio consiste en determinar "whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption".

mente se fundamentó en una confidencia insuficiente. Aduce, además, que fue un registro sin orden no contemporáneo al arresto válido([10]) ni sujeto a ninguna de las excepciones al requisito de orden y, por lo tanto, transgredió la protección constitucional contra registros irrazonables. Concluye que el Art. 17 de la Ley para la Protección de la Propiedad Vehicular, *supra*,([11]) que permitió dicho registro es inconstitucional en su aplicación, y que la evidencia resultante del registro nunca debió ser admitida en evidencia. Impugna, así, el que se denegara su solicitud para suprimirla.

Por su parte, el Procurador General sostiene que el apelante no tiene acción legitimada para invocar la regla de exclusión. Aduce que el apelante no tenía la necesaria expectativa de intimidad en el vehículo. Por otro lado, sostiene que, aún de tener legitimación activa, el apelante no tiene razón en cuestionar la validez del registro. Señala que, una vez el agente Arroyo observó al vehículo que conducía el apelante salir a toda prisa en violación a las leyes de tránsito, la confidencia recibida dejó de ser determinante. Sostiene que el agente podía seguir al vehículo y ordenarle que se detuviera, por tratarse de un delito cometido en su presencia. Señala, además, que una vez el vehículo chocó y el agente vio salir al pasajero portando un arma, el vehículo podía haber sido confiscado y como tal estaba sujeto al registro tipo inventario que posteriormente se efectuó. Le asiste la razón.

 Irrespectivamente de que la Policía se acercara originalmente al área en vista de una confidencia recibida,

---

([10]) El apelante no cuestiona la legalidad del arresto.

([11]) En su parte pertinente, el Art. 17 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3216, faculta a la Policía de Puerto Rico a lo siguiente:

"(3)Confiscar cualquier vehículo, pieza o chatarra, notificados como apropiados ilegalmente, robados, desaparecidos, destruidos o exportados y el conductor, poseedor o la persona que reclama ser dueña no pueda presentar prueba de su título ....

"(4)Inspeccionar todo vehículo comprado en subasta pública; aquellos que reflejen una anotación de gravamen por hurto, destrucción, pérdida total constructiva, abandono y los que tienen clasificación como salvamento. ..."

no es dicha confidencia la que motiva el registro realizado. Estamos más bien ante un registro tipo inventario que se analiza conforme a criterios distintos a los de causa probable. Ostensiblemente, el vehículo en que se transportaba el apelante se estaba utilizando para la comisión de varios delitos contra la Ley de Vehículos y Tránsito de Puerto Rico y la Ley de Armas de Puerto Rico. Podía, por lo tanto, ser incautado por la Policía para comenzar el trámite de confiscación bajo la entonces vigente Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de junio de 1960, según enmendada, 34 L.P.R.A. ants. secs. 1721 y 1722.([12]) También podía ser incautado bajo el Art. 14(4) de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3213(4), en vista de que la descripción del vehículo contenida en la licencia presentada por el apelante no correspondía al vehículo que manejaba.([13])

Como por ley la Policía tenía que retener el vehículo bajo su control, podía realizar un inventario de los objetos que hubiese dentro del vehículo. Este tipo de registro, conocido como "registro tipo inventario", no requiere una determinación previa de causa probable, ya que no se realiza en busca de evidencia delictiva en el transcurso de una investigación criminal. Se emprende más bien a tenor

---

([12]) El Art. 5 de la Ley Núm. 39 de 4 de junio de 1960 enmendó la Ley Núm. 17 de 19 de enero de 1951 (25 L.P.R.A. sec. 447) para permitir que el Secretario de Justicia confisque cualquier vehículo sorprendido transportando un arma en violación a esa ley. La Ley Núm. 39 ha sido derogada y sustituida por la Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723 y ss.).

([13]) Dispone el Art. 14(4) de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3213(4):

"Se faculta a los agentes del orden público detener e inspeccionar y retener para investigación por el período de tiempo que razonablemente sea necesario, cualquier vehículo o pieza cuando ocurra una o más de las circunstancias que se mencionan a continuación:

"(4)La información contenida en la licencia o cualquier otro documento que se presente sea distinta o en algún aspecto sustancial no coincida con la descripción física del vehículo o pieza, y que podría indicar que se trata de un vehículo desaparecido o hurtado."

con una sana política administrativa de salvaguardar el contenido del vehículo y proteger tanto a la policía como al legítimo dueño del vehículo. *Pueblo v. Rodríguez Rodríguez*, 128 D.P.R. 438 (1991).

Hemos resuelto que estos registros no violan la prohibición constitucional contra registros irrazonables contenida en la Sec. 10 del Art. II de nuestra Constitución, *supra*, y no requieren orden judicial previa siempre que el Estado demuestre lo siguiente: (1) que procede prima facie la incautación preliminar para confiscar la propiedad, (2) que existe un procedimiento administrativo que establece guías apropiadas para el registro, y (3) que se siguió estrictamente el procedimiento establecido. *Pueblo v. Rodríguez Rodríguez*, supra, pág. 454.

En este caso, como ya vimos, procedía prima facie la incautación del vehículo para confiscarlo. También existía un procedimiento administrativo adecuado para guiar al agente que efectuó el registro. Específicamente, el Policía encargado de efectuar un registro de inventario tiene que adherirse al formulario PPR 128. Éste lo utiliza la Policía para establecer las condiciones del vehículo y constituye un recibo de entrada y salida de éste.[14] E.N.P., pág. 6. De entrada, el formulario contiene varios encasillados con las potenciales razones por las cuales la Policía ha de haber retenido el vehículo; aquí el agente debe marcar el encasillado correspondiente. Luego el formulario requiere que se identifique el vehículo. Para ello, contiene blancos que el agente debe llenar con el tipo, la marca, el modelo y el color del vehículo, así como con sus números de tablilla, caja, motor o serie y de marbete. Finalmente, contiene una lista de accesorios y equipos que el agente debe examinar para luego marcar un encasillado que indica si el vehículo lo

---

[14] En *Pueblo v. Rodríguez Rodríguez*, 128 D.P.R. 438 (1991), no llegamos a expresarnos sobre los procedimientos utilizados para el registro, incluso sobre la utilización del formulario PPR 128, porque la cuestión no fue planteada en instancia y carecíamos, por lo tanto, de unos autos adecuados para ilustrarnos al respecto.

contiene o no. Terminado el formulario, el agente debe revisarlo y firmarlo. También debe firmarlo el dueño del vehículo.

Es evidente que el protocolo administrativo que ha adoptado la Policía para efectuar un registro tipo inventario es adecuado para cumplir con la norma de *Pueblo v. Rodríguez Rodríguez*, supra. El formulario PPR 128 provee guías claras al agente que efectúa el registro. Define su ámbito, sus objetivos y la finalidad, y así limita la discreción del policía. Resolvemos, pues, que en el caso de marras se cumple con el segundo requisito que mencionamos en *Rodríguez Rodríguez*, supra. Examinados los autos, resolvemos que también se cumplió con el tercero de éstos.

Surge de la exposición narrativa de la prueba que el agente Arroyo, al realizar el registro que nos ocupa, se adhirió estrictamente al protocolo administrativo diseñado en el formulario PPR 128. E.N.P., págs. 6, 9, 21 y 41–43. A preguntas específicas de la defensa, el agente declaró en juicio que el propósito del registro no era encontrar evidencia delictiva, sino cumplir con normas administrativas de la Policía:

> P–... ¿Cuándo es que ustedes registran el automóvil para buscar las metralletas?
>
> R–Cuando realizo el inventario [y] no registré para buscar metralletas. Tengo que hacer un inventario porque, es una norma de la policía y a esos efectos lo hice. E.N.P., pág. 21.

En cuanto a la fidelidad del registro al protocolo, la defensa contrainterrogó extensivamente al agente Arroyo. Éste en todo momento reiteró que sujetó la inspección a "[l]o que pide el informe [formulario]". E.N.P., págs. 41–43. Así lo evidencia el formulario completado por el agente Arroyo y admitido en evidencia. En vista de lo anterior, no cabe duda de que el registro tipo inventario fue constitu-

cionalmente válido y no erró el foro de instancia al negarse a suprimir los resultados de éste.([15])

## IV

El apelante cuestiona que se admitiera en evidencia, al momento de dictar sentencia, prueba sobre sus convicciones anteriores y, en consecuencia, que el juez de instancia agravara su pena. Sostiene que la pena de diez (10) años así impuesta constituye un castigo cruel e inusitado. No tiene razón.

La Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone cuáles serán los factores que el tribunal deberá tomar en consideración para aplicar atenuantes o agravantes a la pena fija señalada para un delito. *Pueblo v. Castro Muñiz*, 118 D.P.R. 625, 632 (1987). En su parte pertinente, la citada regla dispone que:

> El tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o a la parte contraria, podrá oir, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. 34 L.P.R.A. Ap. II, R. 171.

Entre los agravantes, la Regla 171, *supra*, permite considerar el historial delictivo del convicto. Regla 171(m) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Nada más pertinente para probar dicho historial delictivo que copias certificadas de convicciones anteriores. Es por lo tanto patentemente frívolo el octavo señalamiento de error del apelante.

---

([15]) En su tercer señalamiento de error el apelante sostiene que el registro es inválido porque los criterios que contiene el Art. 14 de la Ley para la Protección de la Propiedad Vehicular, *supra*, para justificar el registro, no constituyen motivo fundado para éste ni pueden eximir del requisito de orden. No obstante, el apelante no discutió dicho señalamiento en su alegato. Lo resolvemos, sin embargo, en su contra, en vista de que, como ya señalamos, el registro tipo inventario no requiere ni orden judicial ni motivo fundado.

Tampoco estamos ante una pena tan desproporcionada a la gravedad de la ofensa que deba ser considerada por nosotros como un castigo cruel e inusitado. *Pueblo v. Pérez Zayas*, 116 D.P.R. 197, 201 (1985). El Art. 15 de la Ley para la Protección de la Propiedad Vehicular, *supra*, bajo el cual fue convicto el apelante dispone una pena fija de seis (6) años que puede aumentarse hasta diez (10) años de haber circunstancias agravantes y rebajarse hasta cuatro (4) años de haber circunstancias atenuantes. 9 L.P.R.A. sec. 3214. La pena de diez (10) años impuesta está, por lo tanto, dentro de los parámetros dispuestos por el legislador para la ofensa cometida. El apelante no nos colocó en posición de resolver que la pena adoptada por el legislador para combatir el crimen organizado en torno al tráfico de vehículos obtenidos ilegalmente se excede de lo necesario para atacar el mal que persigue combatir el estatuto. *Pueblo v. Pérez Zayas*, supra, pág. 201. En vista de lo anterior, y tomando en consideración el historial delictivo del acusado,(16) no podemos decir que estemos ante una pena arbitraria que constituya un castigo cruel e inusitado ni que debamos intervenir con la discreción del juez sentenciador. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991).

---

(16) Apenas tres (3) años antes de que el foro de instancia dictara la sentencia apelada en este caso, el apelante fue acusado de tres (3) cargos de tentativa de asesinato, infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, infracción a los Arts. 4, 6, 8 y 32(b) de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 414, 416, 418 y 442(b), e infracción al Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274. *Pueblo v. Sánchez Molina*, Crim. Núms. G83–312, G83–313, G83–314, G83–315, G83–317, G83–316, M83–235, M83–236, M83–237. El apelante hizo alegación de culpabilidad por agresión agravada menos grave en los cargos por tentativa de asesinato y fue sentenciado a cumplir seis (6) meses de prisión por cada uno. Hizo alegación de culpabilidad por infracción al Art. 7 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 417, en el caso por infracción al Art. 8 de la Ley de Armas de Puerto Rico, *supra*, y fue sentenciado a seis (6) meses de reclusión. Se le condenó por los delitos imputados en los demás cargos y se le sentenció a dos (2) años de reclusión por la infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra*, dos (2) años de reclusión por la infracción al Art. 168 del Código Penal, *supra*, y seis (6) meses de reclusión en los restantes delitos.

## V

Nos resta por discutir un último señalamiento de error. El apelante sostiene que la prueba fue insuficiente para demostrar su culpabilidad más allá de toda duda razonable. No le asiste la razón.

La determinación de que la culpabilidad del acusado fue probada más allá de toda duda razonable es revisable como una cuestión de derecho. *Pueblo en interés menor F.S.C.*, supra, págs. 943–944. Ahora bien, en este caso no intervendremos con la decisión del juzgador. Los hechos probados y reseñados *ad nauseam* en los acápites I, II y III de esta opinión demuestran que la prueba versó sobre todos los elementos del delito y conectó al acusado con los hechos imputados. La prueba satisface, además, nuestra conciencia y, como no hallamos pasión, prejuicio o error manifiesto en la decisión del juzgador, no alteraremos su apreciación de la prueba. *Pueblo v. Millán Meléndez*, supra, pág. 181; *Pueblo v. Ortiz Morales*, supra, pág. 466.

Por cuanto antecede, *se confirmará la sentencia apelada.*

El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García emitió una opinión concurrente y disidente. El Juez Asociado Señor Fuster Berlingeri no intervino.

## – O –

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

Esta sencilla apelación nunca debió dar margen para el Tribunal hacer una incursión en el campo constitucional. La opinión contrasta visiblemente con la abstención predicada en *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993).

"Es un principio universal que el hecho humano siem-

pre precede al Derecho. De ahí, para el jurisprudente, la importancia de evaluar *cuidadosamente todas las circunstancias fácticas*; lo contrario significa desdibujar el trasfondo empírico que determina la aplicación correcta de la norma jurídica y, con ello, arriesgarnos a perpetrar una injusticia." (Énfasis en el original.) *Pueblo en interés menor F.S.C.*, 128 D.P.R. 931, 945 (1991), opinión disidente.

I

El 16 de febrero de 1988 fue hurtado del estacionamiento de San Patricio Plaza el auto Honda Prelude, color gris, modelo *1984*. Su dueño José A. Álvarez notificó a la Policía. Los datos correspondientes a esa querella —número de serie del motor, tipo de vehículo, año, modelo, tablilla, nombre del dueño, dirección, etc.— fueron suministrados y almacenados en el sistema computadorizado de identificación vehicular de motor de la Policía (VADIS).

Transcurrieron veinticinco (25) días. El sábado 12 de marzo los agentes del orden público Luis M. Arroyo Pantojas y Edgar Colón Marín patrullaban la Carr. Núm. 60, sector Barrio Almirante de Vega Baja. Al atardecer, aproximadamente a las 6:15 P.M., recibieron una comunicación radial del Cuartel de Vega Baja informándoles de una confidencia anónima a los efectos de que en el área había un Honda Prelude, color gris, ocupado por dos (2) personas armadas con metralletas.

Así advertidos, los agentes Arroyo y Colón continuaron la patrulla. Más adelante, al pasar por la *Cafetería El Bohío*, vieron un vehículo que correspondía con la anterior descripción. Se dirigieron hacia él a investigar. *Súbitamente el vehículo Honda, con dos (2) individuos, salió del estacionamiento a exceso de velocidad y sin tomar las debidas precauciones.* Los agentes Arroyo y Colón lo persiguieron durante un trecho —sirena y biombo encendidos— ha-

cia la Carr. Núm. 2 y llegaron hasta la Núm. 675. Allí, el Honda, al intentar un viraje a la derecha, impactó un poste del tendido eléctrico. Así detenido, del lado del pasajero se bajó José Marrero Nieves *portando una pistola*. Los agentes Arroyo y Colón corrieron, lo alcanzaron y arrestaron.

Contemporáneamente, el agente Manuel Rivera Villafañe, del Cuerpo de Investigaciones Criminales (C.I.C.) —quien también había recibido la comunicación radial del Cuartel, observado y seguido la persecución— a raíz del impacto con el poste arrestó a Emilio Sánchez Molina.

A requerimiento de los agentes, Sánchez Molina les mostró una licencia del vehículo a nombre de Nancy Quiñones, correspondiente a un Honda, modelo *1983*, aun cuando el que conducía era de *1984*. Dicho vehículo fue trasladado al Cuartel de Vega Baja.

El próximo día hábil, lunes 14 de marzo, el agente Arroyo Pantojas realizó el correspondiente inventario con el formulario PPR 128. Durante éste, al examinar los números del motor, caja, serie, tablilla y marbete, se dio cuenta que los de serie del panel (*dashboard*) y poste de la puerta izquierda, parecían alterados y no coincidían con el del frente al asiento delantero derecho. A través del Sistema VADIS, y con la presencia posterior de Álvarez Fernández, comprobó que el número de caja era del Honda Prelude gris, modelo de *1984*, hurtado días antes. No obstante, la tablilla y el sello de inspección correspondían a un Honda de 1983, registrado a nombre de Nancy Quiñones.

Entre otros cargos, Sánchez Molina fue acusado de poseer, comprar, retener y/o disponer de un vehículo de motor a *sabiendas* de que había sido obtenido mediante la comisión del delito de apropiación ilegal. Art. 15 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3214. Conforme los hechos expuestos, el Ministerio Fiscal probó más allá de toda duda razonable los elementos y la comisión de ese delito. Quedó diáfana y contundentemente

demostrado que el auto Honda de Álvarez fue *hurtado* y que, al momento de ser recuperado, Sánchez Molina lo poseía y conducía con una licencia *distinta*.

## II

Mucho antes de entrar en vigor la Ley para la Protección de la Propiedad Vehicular habíamos reconocido que "la posesión por el acusado de la propiedad recientemente hurtada unida a otras circunstancias justifica que se someta la cuestión al jurado ...". *Pueblo v. Batista Maldonado*, 100 D.P.R. 936, 939 (1972); reafirmado en *Pueblo v. Rodríguez Jiménez*, 128 D.P.R. 114 (1991). Véanse, además: *Pueblo v. Llanos Virella*, 97 D.P.R. 95, 98 (1969); *Pueblo v. Rodríguez*, 91 D.P.R. 157 (1964). Y es que el vocablo "a sabiendas" no es uno misterioso o de talismán. Simplemente significa *conocimiento personal*, atributo que pertenece a la esfera del intelecto. Como estado mental, de ordinario se prueba mediante el enjuiciamiento de los hechos y circunstancias que rodean un acto.

¿Cómo puede sostener el apelante Sánchez Molina que la inferencia constituyó la *única prueba* del Ministerio Público en torno al elemento mental de conocimiento de que el vehículo había sido obtenido mediante un delito de apropiación ilegal? (pág. 19.) ¿Cómo pedirnos que descartemos toda la prueba directa y circunstancial desfilada? ¿Vamos a olvidar que la evidencia circunstancial es *intrínsecamente igual* a la evidencia directa? *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 145 (1985). Repetimos, en cierto modo, ante los hechos probados, para cualquier persona de inteligencia promedio la cuestión quedó reducida a aplicar —más que inferencias legales— "una poca dosis de sentido común". Así lo hizo el Jurado, no obstante los esfuerzos en contrario del acusado Sánchez Molina.

## III

*Lo anterior es suficiente para confirmar sin necesidad de entrar en planteamiento alguno de inconstitucionalidad; ello sólo se justifica en situaciones necesarias y extremas.* Véanse: *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618–619 (1981); *Negrón Soto v. Gobernador*, 110 D.P.R. 664, 678–679 (1981); *E.L.A. v. Aguayo*, 80 D.P.R. 552, 596 (1958); *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971). Si un caso puede resolverse sin entrar a examinar cuestión constitucional, debemos abstenernos de hacerlo —*Spanish Am. Tobacco Co. v. Buscaglia*, 71 D.P.R. 991, 993 (1950)— máxime si conlleva unos pronunciamientos más amplios y sin justificación ni apoyo en los hechos. *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 783 (1968). *Como la mayoría a pie forzado ha escogido hacerlo, nos vemos obligados a caminar esa misma ruta.* En el trayecto omitiremos detenernos y repetir principios elementales trillados, tales como la presunción de inocencia, *onus probandi* del Fiscal y la validez de las inferencias contenidas en el Art. 16 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3215. Concentraremos sólo en la contención del apelante Sánchez Molina de que no es posible inferir el conocimiento de vehículo hurtado del mero hecho de que el vehículo o sus números de serie o de identificación están alterados. Alegato del apelante, pág. 14.

Nuestra reacción inicial a semejante proposición fue de sorpresa. No lográbamos explicarnos cómo era posible convertir el argumento del apelante Sánchez Molina en una generalización descriptiva de conducta típica ciudadana y, más aún, en un dato empírico. Posteriormente pudimos notar que hábilmente su argumento entremezclaba situaciones meritorias y excepcionales *ajenas a los hechos del caso*. Reproduzcámoslo.

Por una parte, no existe una conexión racional entre el hecho básico del número alterado y el hecho presumido del conoci-

miento de esa circunstancia por el poseedor del vehículo. Y ello es así por la *experiencia de la vida misma*. Con el mayor respeto instamos a cada uno de los magistrados que comparecen [sic] este Alto Foro a hacerse la siguiente interrogante: *¿En cuantas ocasiones, al manejar un vehículo que no es el suyo, (como es en el caso de una adquisición reciente, un préstamo de un amigo, etc.) ha revisado usted, registro en mano, todos los números de identificación del vehículo? ¿Conocen ustedes de alguna persona que tenga esa práctica?* Estamos seguros que ambas respuestas son negativas. ... Este *sencillo ejemplo* sirve para demostrar que el *ciudadano corriente* no sólo no verifica los datos de la licencia contra los números de los vehículos, (de hecho, estamos seguros que la inmensa mayoría de los conductores ni siquiera saben *dónde* se encuentran!) sino que aún en el insólito caso de que alguien que así lo hiciese tuviese los conocimientos para establecer que una discrepancia que hallase no fuera producto de un error o discrepancia legítima. *En estas circunstancias, inferir el conocimiento por la mera alteración de los números, como se ha hecho en el presente caso, equivale a presumir la culpabilidad.* (Énfasis suplido.) Alegato del apelante, pág. 28.

Rechazamos situarnos —y menos equiparar la conducta del apelante Sánchez Molina— con la de los restantes miembros de este Foro. Es improcedente además atribuirsela a la ciudadanía en general. *Sus ejemplos son inocentes y divorciados totalmente de los hechos del caso.* No hay la más mínima evidencia de que el vehículo que conducía fue adquirido recientemente por él o prestado por un amigo; todo lo contrario, hasta la saciedad se demostró que había sido hurtado días antes.

El "sencillo ejemplo" que nos propone el apelante Sánchez Molina es insuficiente e inadecuado para generalizar. Mediante él pretende invertir precisamente el fundamento válido en que descansa la inferencia legislativa que nos ocupa, esto es, *la experiencia policial de que en la mayoría de las ocasiones, la descripción y alteración de los números de serie son el resultado de una mano criminal.* Y claro está, después de ese salto conceptual, difícilmente puede argumentar y sostener que ello equivale a presumir su culpabilidad. Repetimos, ¿no estuvo presente en su juicio?

¿No vio ni oyó lo que declararon los testigos de cargo? ¿La prueba documental presentada?

## IV

Por otro lado, esa inferencia no atenta contra el derecho constitucional del acusado a guardar silencio y abstenerse de declarar, ya que la posesión puede explicarse mediante evidencia *independiente* del testimonio del acusado. Tampoco exime al Ministerio Fiscal de probar que el automóvil es hurtado como uno de los elementos del delito. Existe una conexión racional entre el hecho básico (modificaciones o alteraciones del vehículo o sus piezas, o números de identificación) y el presumido (conocimiento de que el vehículo o la pieza ha sido adquirida de forma ilícita). La Ley Núm. 8 de 5 de agosto de 1987, Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3201 *et seq.*, no fue promulgada en el vacío, sino en respuesta a "[l]a complejidad de las operaciones de apropiación ilegal, particularmente la realizada por el Crimen Organizado". Exposición de Motivos de la Ley Núm. 8 de 5 de agosto de 1987, Leyes de Puerto Rico 654, 655. La Asamblea Legislativa lo hizo en virtud del conocimiento empírico, acumulado, el cual provee fundamento para justificar el nexo racional entre el hecho básico y el presumido que exige el debido procedimiento de ley. Compárese E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 52. En el descargo de esa misión, ante la gravedad del problema, y consciente la ciudadanía que lo sufre, la legislatura podía racionalmente esperar e imponer un mínimo de diligencia a toda persona que adquiere o adviene en posesión de un vehículo de motor. Por esta razón, aunque de su faz una licencia vehicular no muestre señales de irregularidad, es justo y racional esperar que el conductor verifique que la tablilla y la licencia corresponden con la unidad. Igual diligencia existe cuando

los números de identificación han sido alterados. Como documentos, las licencias son fácilmente falsificables; por ende, con frecuencia, una simple inspección visual de los números de identificación revelará la existencia de posibles irregularidades. A fin de cuentas, si se sostiene el deber de verificar que la licencia corresponda a la unidad, no vemos otra forma que imponerle al dueño —por sí o con la ayuda de un tercero— la obligación de comprobar el número de tablilla e identificación.

El marco conceptual legítimo de los deberes y las obligaciones de la ciudadanía no es la insensibilidad, desidia o falta de diligencia que postula el apelante Sánchez Molina. Su análisis no toma en cuenta que el *Manual de Operaciones* de todo vehículo contiene suficiente información sobre los números de identificación y de serie, y su ubicación y fácil localización.

La premisa que sirve de ancla a su contenido ignora el enfoque integral y realista que la Asamblea Legislativa tuvo ante sí. Este considera la apropiación ilegal de vehículos como "un negocio ilícito que involucra distintos sectores: el roba carro profesional, el hojalatero que le da una nueva apariencia a la unidad, el funcionario venal que le da identidad registral, el vendedor y exportador con conexiones internacionales que dirige sus esfuerzos al mercadeo de las unidades, el empresario indiferente que no toma precauciones para asegurarse de la identidad del adquirente que financia o asegura, y finalmente el comprador insensible que sólo considera sus ventajas personales". Exposición de Motivos de la Ley Núm. 8, *supra*, págs. 654-655.

## V

Distinto al criterio mayoritario, las instrucciones impartidas al Jurado en torno a las inferencias fueron correctas. *El análisis y la conclusión mayoritaria adolece del viejo*

*mal de la fragmentación.* Olvida el principio de que las instrucciones deben considerarse en su totalidad y no en partes aisladas. *Pueblo v. Najul Bez*, 114 D.P.R. 493, 497 (1983); *Pueblo v. Ortiz González*, 111 D.P.R. 408, 413 (1981). Véase *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 151 (1985). Bajo esta norma, si una porción específica de una instrucción es susceptible de interpretarse como diciendo que una inferencia exime al Fiscal de probar más allá de toda duda razonable un elemento del delito, ese lenguaje debe considerarse en el contexto de las instrucciones en su *totalidad. Cf. Francis v. Franklin*, 471 U.S. 307, 315 (1985). El criterio adecuado consiste en determinar la interpretación que un jurado razonable le daría. *Francis v. Franklin*, supra, págs. 315–316.

A la luz de este breve trasfondo doctrinal, ¿la instrucción brindada tuvo el efecto de eximir al Estado del peso de la prueba? Obviamente no.

La porción de las instrucciones que ha provocado inconformidad de la mayoría expresa:

> La Ley..[.] dice... los elementos del delito son poseer el automóvil y que sea a sabiendas de que el automóvil ha sido hurtado o robado. La propia ley define, le dice específicamente, cuales son los factores que ustedes tienen que tomar en consideración para determinar si el acusado sabía. A sabiendas quiere decir, que tengo conocimiento de que ha sido hurtado. Si el acusado sabía, tenía conocimiento de que tenía hurtado. [sic] La ley dice específicamente, y ustedes deben tomar en consideración la ley tal y como se lo explico, que se podía inferir que el acusado tenía conocimiento personal de que el vehículo o pieza había sido obtenido en forma ilícita, cuando ocurriera una o más de las siguientes circunstancias. Entre ellas las varias circunstancias. [sic] Yo solamente le [sic] voy mencionar algunas de ellas en relación con este caso. T.E. de 17 de mayo de 1989, págs. 9–10.

Advertimos que se instruyó al Jurado que aunque tenía que "tomar en consideración" los factores consagrados en la ley, se *"podía"* inferir el conocimiento. Un jurado razonable entendería esta inferencia como *permisible*.

Más aún, el examen de esta instrucción en el contexto de *todas* las instrucciones revela que no tuvieron ningún efecto perjudicial. En éstas se hacen continuas referencias a la presunción de inocencia y al deber del Fiscal de probar los elementos del delito más allá de toda duda razonable. T.E. de 17 de mayo de 1989, págs. 2, 4, 5, 6, 8, 9 y 11.

Cualesquiera reparos quedaron salvados cuando, a pedidos de la defensa, subsiguientemente el juez llamó al Jurado a Sala y les explicó nuevamente que "la ley *permitía* hacer una inferencia *permisible*". (Énfasis suplido.) T.E. de 17 de mayo de 1989, pág. 27. Después de esta aclaración, la defensa no expresó reparo alguno ni pidió ninguna otra instrucción específica. ¿De qué se queja?